Porter *vs.* Allen.

tempt, is *limited* by the 4711th section of the Code, "to the misbehavior of any person or persons in the presence of the said courts, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts, in their official transactions, and the disobedience or resistance by any officer of said courts, party, juror, witness, or other person or persons, to any lawful writ, process, order, rule, decree, or command of the said courts." Was the respondent, when he took the affidavit of Manning, the prisoner, who was brought before him in his office, as a justice of the peace, acting as an officer of the superior court, within the true intent and meaning of the foregoing section of the Code, so as to subject him to the punishment of that court for contempt? By the 3961st section of the Code, justices of the peace and constables are so far recognized as officers of the superior court as to subject them to be ruled in that court in the same manner as sheriffs, when they neglect or refuse to pay over money which they have received or collected in their *official* capacity; that is the extent of their recognition as officers of the superior court, and it required a legislative enactment to do that, which cannot fairly be construed beyond the terms thereof. In our judgment the superior court had no legal power or authority, under the constitution and laws of this state, to punish the respondent for contempt of that court, on the statement of facts disclosed in the record, it not appearing that the respondent had anything to do with the removal of the prisoner, Manning, from the jail.

Let the judgment of the court below be reversed.

FRANCINA S. PORTER, plaintiff in error, *vs.* JOSEPH ALLEN, administrator, defendant in error.

1. If sections 2657 and 2660 of the Code, in so far as they treat of dispensing with actual delivery, are not confined to gifts of personalty, they are, at all events, inapplicable to a bill founded on section 3189, to enforce a voluntary agreement for the conveyance of land, where the bill charges

actual delivery of possession, and where the evidence relates alone to that kind of delivery. The burden is upon the party asserting a gift to prove it as pleaded.

2. Where a bill for specific performance does not aver a purchase, but only a gift with possession on a good and meritorious consideration, followed by valuable improvements made on the faith thereof, it is not competent to decree performance on the basis of an original agreement for value instead of a voluntary agreement. Valuable consideration for the agreement is not involved in such a bill; and value realized, collaterally in other transactions, by the donor, whether from the donee or her kindred, is to be regarded only in so far as it may have contributed to form in the donor a motive to the gift, or in the donee some meritorious claim upon the donor's bounty.

3. To entitle the donee to have such a gift perfected by a conveyance, it is not indispensable that there should be relationship by blood between her and the donor.

4. Slight improvements and of small value, provided they are substantial and permanent in their nature, beneficial to the freehold, and such as none but an owner would ordinarily make upon the estate under like circumstances, may constitute the improvements contemplated by the statute: Code, section 3189; but whether slight or. extensive, they will not serve unless of real value, nor unless they are made by or for the donee pending her possession, and upon the faith of the parol gift sought to be set up and enforced by the bill.

5. What conditions must exist in order to entitle a party to call upon a court of equity to enforce the performance of a voluntary agreement, are fully defined in section 3189 of the Code, and therefore the test of the right is whether these conditions are established, and not whether there has been such a part performance as would render it a fraud in the donor not to exe-  ·cute the agreement.

6. Declarations of the donor made after the time of the alleged gift, and while the donee was in possession, are not admissible to disprove the gift, although other declarations admitting the gift are in evidence for the donee.

7. An offer by the donor, made on the premises, to rent a portion of the land to a former tenant for the succeeding year, is in the nature of an act of ownership, and is therefore, though dating after the time of the alleged gift, admissible in evidence, to be regarded or not by the jury according as they may believe it accompanied with acutal possession in the donor or not.

8. A marriage contract between the donor and his wife, the aunt of the donee, covering a considerable estate belonging to the wife, and reserving to her a power of disposing of it by deed or will; the fact that she made no will but left the husband to inherit her property; the fact that shortly before her death, and before the time of the alleged gift, she urged the husband to give to her niece (the donee,) a plantation, saying that she wanted her to have a home; and the fact that in response, the husband stated he intended to fit up the property which is now claimed in this suit, and give it to the niece before long, are all competent evidence as tending to show

Porter *vs.* Allen.

the probability and fitness of the alleged gift—means and motive on the one side, and merit on the other; more especially, as the donor and his wife had no children of their own, and had brought up the donee in their family from early childhood, he having for her a strong affection and treating her as a daughter.

9. Services done, favors bestowed, or gifts made, by the donor to the donee's parents and their other children, are not admissible in evidence to disprove the alleged gift to the donee herself; the facts of the case suggesting noth ing to warrant the inference that the donor would be the less inclined to make a provision for her because of what he had done for her relations, but, on the contrary, showing much stronger motives to a generous treatment of her than of them.

10. The donee, though the party complainant in the bill, and notwithstanding the death of the donor, is a competent witness in rebuttal to contradict the testimony, not only of the administrator, (defendant in the bill) but of other witnesses, as to conversations had with the donee after the donor's death.

11. The husband is a competent witness for his wife to support her claim to property in a civil suit.

Gifts. Delivery. Specific performance. Consideration. Declarations. Evidence. Witness. Husband and wife. Before Judge HALL. Meriwether Superior Court. November Term, 1874.

Francina S. Porter filed her bill against Joseph Allen, as administrator of Isaac Cheney, deceased, which, with an amendment thereto, presented, in substance, the following facts:

On or about September 9th, 1872, Cheney, who was the owner of the Chalybeate Springs property, in Meriwether county, covering six hundred and forty-four acres of land, more or less, and of all the personalty therewith connected, for a meritorious consideration, natural love and affection, made a parol gift of the same to complainant, by saying to her, in the presence of Mrs. Louisiana L. Love, John J. Collier and Charles T. Porter, "I give to you the Chalybeate Springs property, and appurtenances, and furniture belonging to it.". He then delivered to complainant the possession thereof. After said gift, Cheney ceased to exercise any dominion over said property, but relinquished the same to complainant and her husband. On the faith of this gift, she and her

said husband made valuable improvements upon the property, to the amount of $1,000 00, or other large sum. Complainant was the niece of Cheney's wife; was raised and educated by him, and was, in fact, treated as his child, he having no children of his own. He exhibited towards her the affection of a father, and she reciprocated the devotion of a child.

Mrs. Cheney, at the time of her marriage, possessed property to the amount of $40,000 00, the right to dispose of which by will she reserved by marriage contract. About one month before her death, during her last illness, she appealed to her husband to make a provision for complainant, and he, in the presence of witnesses, promised, at an early date, to transfer to complainant the Chalybeate Springs property. On account of this promise, Mrs. Cheney refrained from devising to complainant her own separate estate, or at least so much thereof as would have been equal in value to the property aforesaid. This constituted a strong moral obligation upon Cheney to give to complainant said property, and was a valuable and meritorious consideration for the aforesaid gift.

After the completion of the education of complainant, she returned to the family of Cheney, and devoted herself to the charge of his domestic affairs and to ministering to the wants of his invalid wife. During the years that he had the management of the springs, she assisted in entertaining such young ladies as were visitors there, and in the general management of the domestic department thereof. These services were valuable to Cheney, were appreciated by him, and constituted an inducement to said gift.

Cheney died in December, 1872, intestate, leaving no wife or children or representatives of children. His wife died several months previous thereto. He left real estate in the county of Talbot, which he acquired by virtue of his marital rights, of the value of $25,000 00, and also personal property of great value. The defendant procured letters of administration upon his estate, and has commenced an action of ejectment for the Chalybeate Springs property against complainant, her husband, and their tenants.

Porter *vs.* Allen.

Waiving all discovery, complainant prays that the aforesaid action of ejectment be enjoined; that the defendant be restrained from interfering with her possession of the property aforesaid; that he be specifically decreed to convey to her by proper instrument the title to the same, and that she may have such further relief as the nature of her case may require.

The answer of defendant was, in brief, as follows: Admits that Cheney was the owner and in possession of the property in controversy on September 9th, 1872, which he alleges to be of the value of $20,000 00, constituting about one-half of the intestate's estate; denies that Cheney, on that day, or at any other time, gave said property to complainant by verbal gift or in any other manner, or that he ever placed her in possession of the same under said pretended gift; alleges that said property was rented to one Harris during the year 1872, but in the month of August the contract was canceled, and Cheney then placed complainant and her husband in possession thereof, as his agents, for the purpose of taking care of the same; admits that the intestate left neither wife nor children, nor the representatives of children, but asserts that his next of kin are nine brothers and sisters, and the representatives of two deceased sisters, and that most of his sisters, and the children of those dead, are in indigent circumstances.

Soon after the death of the intestate, John L. Cheney, Aquilla J. Cheney and this defendant, obtained temporary letters of administration upon his estate, and at the March term, 1873, of the court of ordinary of Talbot county, permanent letters issued to the latter. Upon the grant of the temporary letters aforesaid the defendant and his associates went to the property in controversy for the purpose of taking possession thereof. The object of their visit being explained to the husband of complainant, he manifested great concern, and inquired if it was intended to turn him out, remarking that if it was done he was ruined. In consideration of his distress and of the kind feelings entertained by the defendant and his associates to him and the complainant, they proposed to rent to them for the year 1873, the private residence at the

springs formerly occupied by the intestate, the store-house and all the plantation with the exception of about twenty acres, asking in return only that they would give their personal services in taking care of the property. This proposition was accepted, apparently with gratitude, complainant's husband stating that if he was successful in the management of the property it would be worth to his wife about as much as one share of the estate. On the following morning this contract was reduced to writing, an additional clause added, to the effect that Charles T. Porter, complainant's husband, was to be paid $200 00 for the completion of certain repairs and improvements upon a store-house, which had already been commenced by him, and signed by the respective parties thereto. This instrument was then placed in the iron safe at the hotel, to which Porter and this defendant each had a key. A copy is not hereto attached because defendant is refused access to said safe. This contract was explained to complainant and she made no objection thereto, but professed to be thankful for what the defendant and his associates had done for her. She set up no title of any kind in herself. She stated that she knew her uncle Cheney would have given her something if he had died in his right mind. Under this contract between defendant and his associates and Charles T. Porter, the latter fraudulently obtained possession of the entire property.

As to the improvements placed upon said property after the date of the pretended gift, defendant alleges them to have been of the most trivial character, to-wit: the removal of the body of an old store-house which said Porter stated to defendant he did as the agent of Cheney. This defendant and his associates agreed to pay to him, at his request, $200 00 as compensation for said removal, and for the completion of said building. Beyond this the improvements were only such as were absolutely necessary for the cultivation of the land, and at a high valuation, not worth $100 00.

Defendant admits the relationship by affinity of complainant to the intestate; also that Cheney received a handsome property by his marriage; also that he took complainant when

ten or twelve years of age and educated and supported her, but denies that he entertained towards her the affection of a parent to a child.    From his conduct in another instance defendant suggests that he would have given to her, in addition to her education and support, $1,000 00 if he had not previously done so.    But to suppose that he would have given her the property in controversy, constituting one-half of his estate, would be to charge him with not being just, for it would have left him unable to have paid his debts.

Denies the charges as to the services rendered by complainant in the management of the springs, and in attention to her sick aunt, Mrs. Cheney; admits that Cheney left a considerable estate in Talbot county, but alleges that the lands there only sold for $4,400 00, but the precise amount of the proceeds of the sale of the personalty he is unable to state.    Charges that if such false and fraudulent claims as this are allowed, the estate will prove insolvent.    Defendant also pleads the statute of frauds.

He further alleges that the property in controversy is worth for rent, annually, the sum of $2,500 00; that his intestate died in possession thereof, and that defendant is therefore entitled to recover the same, with rents, for the purposes of administration.

Insisting upon these matters, by way of cross-bill, and waiving all discovery, he prays that the complainant may be decreed to surrender the possession of the aforesaid premises, to account for *mesne* profits, and that he may have such other relief, etc.

To the cross-bill, complainant replied, in substance, as follows: She denies that Cheney's estate will be insolvent if it loses the property in controversy, but alleges that after the payment of all debts there will be a large surplus for distribution.    She denies that such property is worth $2,500 00, annually, for rent, but asserts the same to be worth not more than $500 00 per annum.    Denies that Cheney died in possession of the same, and asserts that the possession thereof was in her under the gift aforesaid.    Alleges the improve-

ments placed on the property to have been reasonably worth $1,500 00.

The evidence introduced upon the trial was voluminous. It is omitted here as unnecessary to an understanding of the decision beyond what is set forth in the motion for a new trial.

The jury found for the complainant, and directed that the property in controversy be conveyed to her by the defendant.

The defendant moved for a new trial on the following grounds, to-wit:

1st, 2d, 3d, 4th, 5th. Because the verdict was contrary to the evidence, law, and charge of the court.

6th. Because the court erred in charging the jury as follows: "The burden is on the complainant to prove that Isaac Cheney made the gift alleged in the bill. To constitute a valid gift, there must be intention to give by the donor, acceptance by the donee, and delivery of the article given, or some act accepted by the law in lieu thereof; if the donation be of substantial benefit, the law presumes acceptance, unless the contrary be shown. Actual manual delivery is not essential to the validity of a gift. Any act which indicates a renunciation of dominion by the donor, and the transfer of dominion to the donee is constructive delivery."

7th. Because the court refused to allow defendant to prove by Dr. J. L. Cheney, and others, that they heard Mr. Cheney say, a short time before he started to Florida, that he was going to return in time to attend the sheriff's sale in Talbot county, on the first Tuesday in December, 1872, and purchase the Stephenson place as a home for Mrs. Porter.

8th. Because the court refused to allow defendant to prove by James Woodard, conversations had with Mr. Cheney at the springs in October, 1872, in which Cheney said that he wanted Woodard to remain with him at the place next year, and that he intended to run the springs in 1873.

9th. Because the court refused to allow defendant to prove by John Warner that he heard Cheney say, in October, 1872, that he intended to run the springs in 1873.

10th. Because the court refused to allow defendant to prove

by Dr. Pope that, in November, 1872, he heard Mr. Cheney say that he was going to take charge of the springs, and refit them; that he considered them his most valuable property; and invited him to come there with his family, in the summer of 1873.

11th. Because the court charged the jury as follows: "The complainant claims that there was a valuable consideration for the gift; she claims that she rendered valuable services to Mr. Cheney, in waiting on and caring for his wife. If, from the evidence, you believe that complainant rendered services for Cheney in waiting upon and caring for his wife, and if you believe from the evidence, that in consideration of such services, Mr. Cheney gave the springs to complainant, and she went into possession under the gift, and if you believe from the evidence that such compensation was not inadequate, the complainant would be entitled to specific performance. But if you believe from the evidence that Mr. Cheney did not give the springs place to complainant, or if he did give it, that complainant did not render the services, or if she did, that the gift was not made by Mr. Cheney in consideration thereof, or if it was, that such consideration was inadequate, the complainant would not be entitled to a specific performance of the gift thus made, unless it is founded on some other consideration."

12th. Because the court refused to allow defendant to prove by James Vernay, that on the 30th of October, 1872, he entered into a partnership with Isaac Cheney to carry on a livery stable business at the Chalybeate Springs in 1873, and that Cheney was to furnish him a house to live in at the springs, and said he intended to improve the springs so as to make them a first-class watering place.

13th. Because the court refused to charge the following request: "If the jury, from the evidence, shall believe that Cheney made a verbal gift of the springs place to complainant, and put her in possession of the same, and she has made valuable improvements upon the faith thereof, and that complainant was the niece of his wife, and that was the only re-

lationship between them, such gift is without consideration, and equity will not decree specific performance of the same."

14th. Because the court refused to charge the following request: "If the jury, from the evidence, shall believe that Cheney did give the springs property by parol to complainant, and gave her possession upon a meritorious consideration, yet if the proof shows that she has made slight improvements on the place, and that the same are of small value, then she is not entitled to the relief prayed for."

15th. Because the court charged the jury as follows: "If, at the marriage of Isaac Cheney and his wife, they entered into a marriage settlement, in which was secured to Mrs. Cheney the right to dispose of property therein mentioned, either by deed or will, and before the death of Mrs. Cheney, Mr. Cheney agreed with her, in consideration that she would not dispose of such property, that he would give the springs to complainant, and if by reason of such agreement, Mrs. Cheney did not dispose of such property by will or deed, and if, in pursuance of such agreement, Mr. Cheney made to complainant the parol gift stated in the bill, then the complainant will be entitled to specific performance, if you believe from the evidence that the consideration was not inadequate. But if, from the evidence, you believe that Cheney did not make such agreement, or if he did, that the consideration was not that Mrs. Cheney was not to dispose of the property, then complainant will not be entitled to a specific performance of the gift, if made, unless it is founded on some other consideration."

16th. Because the court, over the objection of defendant's counsel, allowed complainant, in rebuttal, to testify as follows: She was at the springs in December, 1872, when the administrators came there; never agreed to give up the possession of the property, nor authorized any one to do so. The administrators said nothing to her about giving up possession. No conversation took place between the administrators and witness concerning the property. She did not on any occasion express herself to said administrators as thankful for be-

ing permitted to remain on the place during 1873. Did not say, on the 7th or 8th of December, 1872, at the late residence of Isaac Cheney, in the presence of Edward P. Martin, that she was ruined if Mr. Cheney left no will, being left without a home or means of subsistence, or words to that effect. On the 7th or 8th of December, did not say, in the presence of Dr. Joseph Stephenson and his wife, at the residence of the late Mr. Cheney, that if said Cheney had not done more for her than she knew of, she was ruined. Said nothing to either of them in reference to the will of Isaac Cheney. Did not, on either of the aforesaid days, say in the presence of Alfred Patrick and his wife, or either of them, that it was an awful thing, and she would be obliged to go down, or that if she could have gone to him and put a pen in his hand, it would all have been right. (The court restricted witness to the statement of facts which transpired subsequent to the death of Mr. Cheney.)

17th. Because the court allowed complainant to read in evidence a marriage contract, made and entered into by and between Isaac Cheney and Matilda T. Justice, his wife, on the 16th of January, 1838, in which the right was reserved to Mrs. Cheney to dispose of the property therein specified by deed or will.

18th. Because the court refused to charge the following request: "Nothing is part performance which does not place the party seeking specific execution in such a situation as to render it fraudulent in the other party not to execute his agreement."

19th. Because the court refused to give the following request in charge: "If the jury shall believe, from the evidence, that Cheney and his wife, prior to their marriage, entered into a marriage settlement, in which Mrs. Cheney reserved the right to dispose of a portion of the property therein mentioned, either by deed or will, the proof of such contract does not of itself furnish evidence to show that the gift alleged in the bill is founded upon a valuable or meritorious consideration."

20th. Because the court allowed complainant to prove, by Mrs. Edwards, a conversation between Mr. Cheney and Mrs. Cheney, in which Mr. Cheney promised Mrs. Cheney that he would give the springs place to Mrs. Porter, as soon as he could have them fixed up. This conversation was about one month prior to the death of Mrs. Cheney.

21st. Because the court refused to allow defendant to prove, by James Warner, that the last interview he had with Mr. Cheney was in the office of the hotel, at the springs, on the night of the 27th of October, 1872, the day before he started to Florida; that Cheney stated that he wanted him (Warner) to remain at the springs place during 1873, saying that he (Warner) could have choice of any land on the place, that he (Cheney) did not want to rent his land on that place to free negroes.

22d. Because the court refused to allow defendant to prove, by George Elder, that Mr. Cheney supported John Love and his family for a long while after he married the mother of complainant.

23d. Because the court allowed Charles T. Porter, the husband of complainant, to testify in said case.

The court ordered a new trial on the 1st, 2d, 3d, 4th, 5th, 7th, 8th, 9th, 10th, 12th, 13th, 15th and 18th grounds of the motion. To this ruling complainant excepted. The defendant excepted because the motion was not also sustained on the 6th, 11th, 16th and 17th grounds.

The case was tried before Judge Buchanan, and the motion for new trial was heard by Judge Hall.

George L. Peavy; W. B. Hill; Willis & Willis, for complainant.

E. H. Worrill; John W. Park, for defendant.

Bleckley, Judge.

The opinion of the court is very fully and minutely stated in the head-notes, and the same, taken in connection with the

The Scofield Rolling Mill Company *et al. vs.* The State of Georgia.

reporter's statement of the facts, will be understood without further elaboration.

Judgment affirmed.

---

THE SCOFIELD ROLLING MILL COMPANY *et al.*, plaintiffs in error, *vs.* THE STATE OF GEORGIA, defendant in error.

(BLECKLEY, Judge, having been of counsel, did not preside in this case.)

1. An aggregate corporation can only act through and by agents. It deals with the world through its agents; it can deal in no other way.

2. Such a corporation can commit, and does commit frauds; if so, it commits the frauds through the agents, for it can commit it in no other way.

3. It is, therefore, bound by the fraudulent conduct of its agents, engaged in its business and on that line of the business where it puts such agent to work. All deceit, misrepresentation, falsehood, in the course o: that business, whereby anybody is cheated, the corporation is responsible for.

4. If such fraudulent conduct passes the verge of a civil wrong and becomes a public crime, is the corporation responsible, and in what cases, under what circumstances, and to what extent? *Quære !*

5. The state, so far as her interest in the Western and Atlantic Railroad is concerned, acts through agents, and notice of fraud to her agent in the line of his business, is notice to the state; and collusion of its agent with another's agent, both principals being otherwise innocent, would bar the state's right to recover, if her agent was dealing with the other's agent within the scope of his authority.

6. If the treasurer of the state road, who paid money to the treasurer of the Rolling Mill Company, colluded with him or had knowledge of his fraud, the state would be estopped; *aliter* if any other subordinate agent so had knowledge and colluded.

7. When a witness of the plaintiff testifies from recollection to a matter capable of certain ascertainment by measurement, and after the trial by the jury, but pending the motion for a new trial, makes an accurate measurement, and swears that he was mistaken in his testimony, and the testimony is very material, and probably largely influenced the verdict, and the discrepancy between his testimony before the jury and his affidavit very great, and where this witness had been the agent of plaintiff, engaged in this very work measured at the instance of the defendant, who swears this information has come to his knowledge since the trial, and who produces the sworn affidavit of plaintiff's witness and another, to the measurement—a new trial, on the ground of newly discovered evidence, will be granted, the facts showing no want of diligence on defendant's part.