RAY, administrator, *v.* CAMP, administrator.

1. Error in admitting secondary evidence of the contents of a lost writing the execution of which had not been proved is cured when, during the further progress of the trial, the execution of such writing is duly established.
2. Though one may be a party defendant to and interested in the result of a case instituted by the personal representative of a deceased person, such defendant is not incompetent to testify to what was said in a conversation had in his presence between the plaintiff's intestate and another, such conversation being neither a "transaction" nor a "communication" between the witness and the deceased.
3. An objection made generally to the introduction of specified evidence as a whole is not well taken when some of it is admissible. The proper practice is to point out the inadmissible portion and object to it separately.
4. Excluding immaterial evidence is not cause for a new trial.
5. As a general rule, a party's reasons for failing to subpœna a particular witness is not a proper subject-matter of investigation.

Argued April 28, — Decided May 14, 1900.

Ejectment. Before Judge Janes. Douglas superior court. November term, 1899.

*L. R. Ray* and *J. H. McLarty,* for plaintiff.
*J. S. James* and *Roberts & Hutcheson,* for defendant.

LUMPKIN, P. J.   An action was brought by Ray, as administrator of Matthew Read, against J. G. Camp, for the recovery of land.   While the same was pending the defendant died, and W. H. Camp, administrator upon his estate, was made a party in his stead.   The trial resulted in a verdict for the defendant, and the plaintiff brings here for review a judgment overruling his motion for a new trial.   It was admitted that the title to the premises in dispute was, at one time, in Matthew Read, the plaintiff's intestate.   The defense was, that Read had bar-

gained the land to one Lane, giving him a bond for title, that Lane had transferred this bond to J. G. Camp, and that he had paid Read the purchase-money in full and therefore had a perfect equity in the land as against Read's legal representative. There was sufficient evidence to warrant a finding that the defense thus set up was the truth of the case, and whether there should or should not be a new trial depends upon whether or not certain rulings complained of in the motion for a new trial were correct.

1. The court, over objection of counsel for the plaintiff, allowed the defendant to introduce parol evidence of the contents of the bond for title from Read to Lane. This evidence was objected to on the ground that it was inadmissible without proof of the actual execution of the bond. There was, at the time the objection was made, already before the jury some evidence tending to show that Matthew Read had actually executed and delivered the bond in question to Lane. Without, however, passing upon the sufficiency of this evidence to render admissible secondary evidence of the contents of the bond, it is sufficient to say that during the further progress of the trial the execution of the bond by Read and its assignment by Lane to J. G. Camp were affirmatively established, and as to these matters there was practically no dispute between the parties. So whether the parol evidence referred to was properly admitted or not, is entirely immaterial.

2. The plaintiff in error further complains that the court erred in allowing the defendant, W. H. Camp, to testify that Matthew Read admitted in the presence of the witness to J. G. Camp that the latter had made certain payments on the purchase-money of the land. The objection was that, Read being dead, W. H. Camp was incompetent to testify to the admissions in question, he being a party to the case and also, as heir at law of his intestate, interested in its result. We do not think W. H. Camp was incompetent to testify to these admissions. He was not disqualified either by reason of his being a party or because of his interest in the case. If, therefore, he was incompetent, it was under paragraph 1 of § 5269 of the Civil Code, which declares that: "Where any suit is instituted or

defended by a person insane at the time of trial, or by an indorsee, assignee, transferee, or by the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the insane or deceased person, as to transactions or communications with such insane or deceased person."· It was argued that as the action had been instituted by the representative of Matthew Read, a deceased person, the opposite party, W. H. Camp, could not lawfully testify to the admissions in question, because they related to "transactions or communications" between the witness and the plaintiff's intestate. In point of fact this is not true. W. H. Camp was not testifying to any transaction or communication between himself and Matthew Read. The evidence does not disclose that there ever was any transaction or communication between these parties with reference to the subject-matter of the present action. There is nothing in the law rendering W. H. Camp incompetent to testify to conversations between Matthew Read and J. G. Camp which the witness happened to hear. As has been frequently ruled, this court is not at liberty to extend by construction the statutory provisions relating to the competency of witnesses, but is under the duty of following and enforcing them literally. We therefore hold that as to the particular matter now in hand the court committed no error.

3. Mrs. Camp, the widow of the deceased, also testified to certain conversations between Matthew Read and her deceased husband, occurring in her presence, in the course of which Read admitted that her husband had made certain payments on the land. This witness also testified to a conversation between herself and Read, in which similar admissions were made. The evidence of Mrs. Camp was objected to as a whole, counsel for the plaintiff insisting that none of it was admissible, for the reason that Read was dead, and that Mrs. Camp, as heir at law of her deceased husband, was interested in the result of the case. If our ruling as to the testimony of W. H. Camp, discussed above, is correct, it follows that the testimony of Mrs. Camp relating to the conversation between her husband and Read was admissible. We are inclined to think that her testi-

mony as to conversations had directly between herself and the deceased Read was not admissible, since it related to a direct communication between herself and the plaintiff's intestate. As a party to the case she could not properly be allowed to testify to this communication; and, under paragraph 4 of the above-cited section of the Civil Code, the same disqualification attached to her as a person interested in the result of the suit. The difficulty, however, is that the plaintiff objected to evidence "in bulk," some of which was admissible and some of which was not. He ought to have pointed out and objected separately to the portion which could not properly be received. Having failed to do so, his exception to the admissibility of the testimony as a whole is not good. See *Harris* v. *Lumber Co.,* 97 *Ga.* 465, cited approvingly in *Ellis* v. *Poe,* 109 *Ga.* 422, wherein reference is also made to other pertinent decisions of this court.

4. Complaint is made, in one ground of the motion for a new trial, that the court erred in refusing to admit testimony to the effect that J. G. Camp had never paid a promissory note given by him to Lane in consideration of the assignment of the bond for title hereinbefore referred to. This was a matter of no consequence, for the real and only substantial controversy between the parties to the case on trial was whether or not J. G. Camp had paid Matthew Read the purchase-money of the land in dispute.

5. Counsel for the plaintiff, while the witness W. H. Camp was under cross-examination, asked him why he did not have present one Bomar to testify in the case. Complaint is made that the court refused to require the witness to answer this question. Certainly there was no error in this. There is not even a hint in the record why it was not as much incumbent upon the plaintiff as upon the defendant to procure the testimony of Bomar, if deemed relevant or material to the issues involved. In no view of the matter could it be fairly said that the defendant was any more responsible for the absence of Bomar than was the plaintiff himself. This being so, the defendant's reason for failing to subpœna Bomar as a witness was totally irrelevant.

　　*Judgment affirmed. All concurring, except Fish, J., absent.*