WALKER *et al. v.* NEIL, and *vice versa.*

1. Any point of practice which, if sound, would be fatal to a motion for a new trial should be presented to the trial court by a motion to dismiss the application for a new trial, and if not so presented, will be considered as having been waived.

2. Where an order required the brief of evidence in a motion for a new trial to be filed in the clerk's office within ten days after the motion was heard and determined, and the judgment overruling the motion was rendered on the first day of August, 1902, and the brief was filed in the clerk's office on the eleventh

day of that month, the filing of the brief was within the time limitation prescribed by the order.

3. In a suit against an executor for the specific performance of a parol gift of land, alleged to have been made by his testator, the plaintiff is not incompetent to testify to admissible facts which occurred after the death of the alleged donor.

4. Where, in such a case, the evidence shows that the plaintiff was in possession of the property in controversy at the time of the testator's death and has since continued in possession thereof, and the executor claims that such possession has always been purely permissive, evidence as to improvements made by the plaintiff upon the property since the death of the alleged donor is admissible for the purpose of rebutting such claim of the executor.

5. " Where money due on a mortgage is paid by one whose duty it is, by contract or otherwise, to pay the mortgage, it is a release, though in form it purports to be an assignment."

6. Where a father, for the purpose of making a gift to his daughter, purchased land upon which there were certain incumbrances securing debts of the vendor, and expressly agreed with the vendor to assume and pay these debts as a part of the purchase-money, and, after the land was conveyed to him, made an unconditional parol gift of the same to his daughter and placed her in possession thereof, she, relatively to him or his estate, upon becoming entitled to a specific performance of his parol promise, took the land freed from the incumbrances.

7. Where the parol gift became, in equity, complete during the father's lifetime, and after his death the daughter remained in possession of the land and paid the taxes thereon, and the executor of the father's will also paid the taxes under the belief that the property belonged to the estate, such executor acquired no right to have the land, when decreed to be the property of the daughter, subjected to the repayment to him of the amount so expended by him for taxes.

8. If, however, the executor used funds of the estate in repairing and improving the property at the request of the donee or with her consent, he was entitled, when the donee brought an action against him for specific performance, to set this fact up and to have the land, when decreed to be the property of the donee, subjected to the repayment of the money so expended by him.

9. Improvements made for a donee by another person upon the land embraced in a parol gift, pending the donee's possession and upon the faith of the gift, stand upon the same footing as if they were made by the donee.

10. Residence by a husband and wife upon land which the wife claims and in which the husband claims no interest is notice of whatever interest the wife has therein.

Argued March 19, — Decided June 27, 1903. Rehearing denied August 14, 1903.

Equitable petition. Before Judge Felton. Houston superior court. August 1, 1902.

*Louis L. Brown* and *Bacon, Miller & Brunson,* for Walker et al. *John P. Ross,* contra.

FISH, J.   Mrs. Neil brought an equitable petition against W. H.
Harris as executor of the last will of H. C. Harris, and Mrs. C. E.
Walker.   So much of the allegations of the petition as we deem it
necessary to set forth made the following case:  The plaintiff was
in the possession of a certain described dwelling-house and lot in
the town of Fort Valley.   Her father, H. C. Harris, had given her
this property and put her in actual possession thereof, since which
time she had been in the open, notorious, continuous, exclusive, and
adverse possession of the same, under claim of title, occupying the
dwelling-house as a residence.   Her father gave her this land and
placed her in possession thereof, in consideration of the love and
affection which he had for her, and upon consideration and in pur-
suance of an agreement between him and Sterling Neil, the father
of her husband.   Shortly after the plaintiff's marriage, her father,
H. C. Harris, and her husband's father, Sterling Neil, jointly gave
to her husband a certain tract of land in the town of Fort Valley,
known as the Foundry property, and soon thereafter her father
agreed with Sterling Neil that he would give to the plaintiff the
dwelling-house and lot in controversy for a home, if Neil would pay
the entire purchase-price of the Foundry property which they had
jointly given to the plaintiff's husband; whereupon Sterling Neil
paid to her father one half of the purchase-price of the Foundry
property, about $1,700, and her father, pursuant to the agreement,
and because of his love and affection for her, gave her the property
in controversy and placed her in possession of the same.   Although
the plaintiff's father frequently declared it to be his purpose to make
and deliver to her a deed to the premises in dispute, so soon as he
finished paying the purchase-price thereof by paying a mortgage
lien created thereon by his grantor, he died without having executed
to her such deed.   Upon the faith of her father's gift of the prop-
erty to her, the plaintiff, while in possession of the same, and with
his full knowledge and approval, made certain described valuable
improvements thereon.   The defendant W. H. Harris, as executor
of the last will of H. C. Harris, in August, 1901, more than seven
years after he became executor, executed a deed to said premises
to the defendant, Mrs. C. E. Walker.   Mrs. Walker was not an in-
nocent purchaser of the land without notice;  for, at the time the
deed was executed to her by such executor, the plaintiff was in open
and notorious possession of the same, claiming it as her own, and

her possession was notice to Mrs. Walker of her claim of title and the character of her title.    The deed to Mrs. Walker was executed to her in consideration of a debt due to her by the estate of H. C. Harris.    The defendants are threatening to interfere with the plaintiff's possession and enjoyment of the property, and are demanding that she pay rent for the same, claiming that it belongs to Mrs. Walker.    The deed from the executor to Mrs. Walker is a cloud· upon the plaintiff's title.    Mrs. Walker has instituted a proceeding against the plaintiff's husband to evict him, as a tenant holding over, from the house and lot in question.    The plaintiff prays that the defendants be enjoined from interfering with her full and free enjoyment and possession of the property ; that the executor be required to execute a deed conveying the title to her, and the title be decreed to be in her as against the executor and the estate of his testator ;    and that Mrs. Walker be required to surrender the deed made to her by the executor, and such deed be declared to be null and void ; and for general relief.

Mrs. Walker answered that she was advised that the plaintiff's husband was in possession of the property in controversy, and did not know whether the plaintiff had ever been in possession of the same or not; that she knew nothing as to the allegations of fact upon which the plaintiff based her claim of title to the land; that the statement that she, Mrs. Walker, was not an innocent purchaser was not true, as she never had the slightest notice that the plaintiff, or any other person than W. H. Harris as executor, made any claim whatever to the property, and she bought it in the utmost good faith, without any suspicion of, or cause to suspect, any adverse claim of title thereto, and paid for it the sum of $1,800 ; and that upon the plaintiff's husband refusing to pay her rent, she had had a warrant issued to evict him as her tenant.    The executor in his answer denied that the plaintiff had any title to or interest in the land, either by gift or otherwise, and alleged that while she and her husband were in possession of the premises in dispute, such possession was and always had been purely permissive, permissive by the testator during his lifetime and afterwards by the executor until he sold the property to Mrs. Walker.    He alleged that the testator made all necessary repairs on the property and paid for them before the plaintiff was put in possession, and that respondent, knowing that the property belonged to the testator's estate,

at the plaintiff's request made the repairs that were necessary after the death of the testator, expending therefor the sum of $349.79. He admitted that the plaintiff and her husband made certain minor improvements on the place, but alleged that they were not necessary and merely added to the convenience of the occupants, and that they could well afford to do this, as during all the time that they had occupied the premises they had paid no rent. He alleged that, acting under the powers conferred upon him by the will, he had sold the place, at its fair market value, to Mrs. Walker, and that she was entitled to its possession. By amendment to his answer, the executor alleged that when the testator purchased the property it was incumbered with two mortgages; that after the testator's death the respondent had paid to the respective holders of these mortgages the amounts of the same and had the mortgages duly transferred and assigned to himself as executor, the amounts so paid aggregating $1,581.45; that he had paid State, county, and city taxes on the property, amounting to the sum of $168.00, and, at the request of the plaintiff, had paid out for repairs and improvements on the premises the sum of $349.79; and that the entire amount paid out by him for all these purposes was $1,999.24. He prayed, that, if the house and lot should be found and determined to be the property of the plaintiff, the court would decree the same to be sold for the purpose of paying off and discharging said sum of $1,999.24, with interest thereon from the dates when he had expended the respective sums of money making up such aggregate amount, the proceeds of the sale to be applied first to reimbursing the estate of H. C. Harris for these expenditures, and the remainder, if any, to be turned over to the plaintiff. Upon the trial, the court submitted to the jury only certain issues of fact, which the jury were to determine by answering written questions prepared by the court and propounded to them. The jury found these issues of fact in favor of the plaintiff, and the court thereupon entered a decree in her favor. The defendants made a motion for a new trial, which being overruled, they excepted.

1. The motion for a new trial was filed on April 16, 1902, on which date the court passed an order in which it was provided, that, "If the hearing of the motion shall be in vacation, and the brief of evidence has not been filed in the clerk's office before the date of the hearing, said brief of evidence may be filed in the clerk's office

at any time within ten days after the motion is heard and determined." The motion was heard and determined on August 1, 1902, after the judge had, on that day, approved the brief of evidence and ordered it filed. The brief of evidence was filed in the clerk's office on August 11, 1902. The defendant in error has made a motion here to strike from the record the brief of evidence, upon the grounds, that there is no brief of evidence filed according to law, and no brief of evidence in the case as provided by law, "because (1) the superior court has no power or authority to authorize the movant to file a brief of evidence after a motion for new trial has been heard and determined, and (2) no brief of evidence was filed in the clerk's office within ten days after the motion was heard and determined, as required by the order of said superior court." If there is any merit in the ground that the brief of evidence must necessarily be filed in the clerk's office before the motion for a new trial is heard and determined, it is too late for the respondent in such motion to take advantage of it here. It should have been presented to the trial judge by a motion to dismiss the motion for a new trial, and a failure to do so amounted to a waiver of it. "Any point of practice raised by the respondent, fatal to the motion, should be presented by a motion to dismiss the application for a new trial, and if not so presented, will be considered as waived." *Augusta Railway Co.* v. *Andrews*, 89 *Ga.* 653.

2. In view of the decision rendered in *Rusk* v. *Hill*, ante, 722, the second headnote requires no elaboration.

3, 4. One of the grounds of the motion for a new trial was, that the court erred in permitting the plaintiff to testify that, after the testator's death, she had made certain described improvements upon the property in dispute, and that the executor had made certain improvements thereon at her request, the objection being that this testimony "related to improvements made since the testator's death, which fact made her an incompetent witness ; and because a donation can not be completed by an executor if the gift was not completed in the father's lifetime, and no improvements made by her since and even assented to by the executor could ripen into and perfect title in her." The plaintiff was not incompetent to testify to admissible facts which had transpired since the death of the testator. Such testimony did not relate to transactions or communications with the testator. The testimony in reference to the

improvements ·which  the  plaintiff  had  placed  upon  the  property
since  the  death  of  the  testator  was  admissible  as  tending  to  show
that  her  posession  was  not,  as  claimed  by  the  executor,  merely  a
permissive  one,  but  was  adverse  to  the  executor.      Hence,  even  if
any  portion  of  this  testimony  was  inadmissible,  the  objection  to  the
whole  of  it,  without  specifying  or  objecting  to  the  illegal  portion
separately,  was  not  sound.      *Harris* v. *Amoskeag  Lumber  Co.*, 97
*Ga.* 465 ; *Smalls* v. *State*, 99 *Ga.* 25 ; *Walker* v. *Maddox*, 105 *Ga.*
253 ; *Ray* v. *Camp*, 110 *Ga.* 818 ; *Maynard* v. *Interstate  B. & L.*
*Asso.*, 112 *Ga.* 443.      However,  we  do  not  see  how  the  testimony
in  reference  to  the  improvements  made  upon  the  place  by  the  ex-
ecutor,  at  the  request  of  the  plaintiff,  could  have  been inadmissible,
as  he  in  his  answer  alleged  that  he  had  made  such  improvements,
and  surely  could  not  have  been  hurt  by  testimony  of  the  plaintiff
which  tended  to  support  the  allegations  of  his  own  plea.      Certain
testimony  of  S. T.  Neil  the  plaintiff's husband,  as  to  improvements
placed upon the property after the testator's  death was objected to by
the  defendants,  " on  the  same  ground  stated  above,  and  it  was  ad-
mitted  by  the  court  over  their  objection."      In  the  motion  for  a
new  trial  this  ruling  was  alleged  to  have  been  erroneous.   Of  course,
the  ruling  which  we  have  just made  in  reference  to  the  testimony
of  Mrs.  Neil  disposes  of  this  ground  of  the  motion.

     5.    In  the  next  ground  of  the  motion  for  a new  trial  it  was  al-
leged  that  the  court  erred  in  refusing  a  written  request  to  give the
following  in  charge  to  the  jury:   " If  you  should  find  that  Mr. H.
C.  Harris  during  his  lifetime  made  to  his  daughter,  Mrs.  Neil,  a
valid  legal  gift  of  all  his  title  to  and  rights  in  the  property  in  ques-
tion,  it  will  be  necessary  for  you  to  go  further  and  ascertain  what
Mr.  Harris's  titles  and  rights  were  at  the  time  of  such  gift ;  and in
this  connection  you  should  bear  in  mind  that  Mr.  Harris  could  only
give  away  what  he  then  owned ;  that,  if  it  be  a gift  at  all,  the  title
passed  at  the  time  of  the  gift,  and  that  the  recipient  of  his  gift  took
it  subject  to  any  liens  or  mortgages  thereon ;  and  that  if  subse-
quently  to  said  alleged  gift  Mr. W. H.  Harris,  executor, has  bought
and  had  transferred  to  himself  such  liens  to  save  the  property  as an
asset  of  the  estate,  then  he  would  be  subrogated  to  all  the  rights
of  the  original  holders  of  such  liens,  and  these  liens  would  still  be
as  valid,  subsisting  liens  against  said  property  as  if  in  the  hands  of
the  original  holders  thereof.    And  further,  if  it  be  shown  that  the

executor, acting in the belief that the property in question was the property of the estate, at the request of the plaintiff or with her knowledge and consent put improvements on the property to preserve it as an asset of the estate, then you should direct that the value of such improvements, with seven per cent. interest thereon since they were made, be set up as a charge against the property superior to the claim of the plaintiff." There was no error in refusing to give this in charge, for the evidence did not authorize it. The uncontradicted evidence showed that H. C. Harris purchased the property in controversy from B. H. Watson. Watson, whose testimony was undisputed, testified that Mr. Harris purchased the house and lot from him for $1,500; that Harris told him that he had all the real estate in Fort Valley that he wanted, and was simply buying this house and lot for the plaintiff; that at the time of the sale he, Watson, owed two notes for $600.00 each, secured by mortgages on the place, one held by the Security Investment Company and one by Sterling Neil, and "under the contract of sale [the witness] was to be relieved" of this indebtedness and Harris "was to assume it as a part of the purchase-money, and he gave [the witness] the difference between the amount of the liens and the purchase-price." So, when the executor paid off these mortgages, he was simply paying debts which his testator had, for a valid consideration, obligated himself to pay, and when he paid those debts the liens securing them at once became extinct. The debts which the liens secured were Watson's debts. A mortgage, or other lien, can have no existence apart from the debt which it secures. Destroy the debt, and you destroy the lien which secured it. In order for the executor to have purchased and acquired title to the liens upon the land, he would have had to purchase and acquire title to the debts against Watson which these liens secured. He could not, as executor, lawfully purchase and hold these debts against Watson; for his testator, for a valid consideration, had obligated himself to Watson to assume and pay these debts. As he could not purchase the debts which the liens secured, he certainly could not purchase the liens, which were merely incidental and dependent for their vitality upon the debts represented by the notes. When he paid to the holders of the notes the money due upon them, the notes were extinguished, and the liens securing them were destroyed with them. See *Ryan* v. *Rice,* 109 *Ga.* 448.

"Where money due on a mortgage is paid by one whose duty it is, by contract or otherwise, to pay the mortgage, it is a release, though in form it purports to be an assignment." *Clay* v. *Banks*, 71 *Ga.* 363. In Brown *v.* Lapham, 3 Cush. 554, cited by Justice Hall in *Clay* v. *Banks*, supra, Chief Justice Shaw said: " If the money is advanced by one whose duty it is, by contract or otherwise, to pay and cancel the mortgage and relieve the mortgaged premises of the lien, a duty in the proper performance of which others have an interest, it shall be held to be a release, and not an assignment, although in form it purports to be an assignment. When no such controlling duty exists, such an assignment shall be held to constitute an extinguishment or an assignment, according to the intent of the parties; and their respective interests in the subject will have a strong bearing upon the question of such intent." In Burnham *v.* Dorr, 72 Me. 198, it was held: "Payments made by a party upon a mortgage debt, in pursuance of a duty in the performance of which others are interested, must be applied and allowed as payments, and can not be used by such party as a part consideration for the assignment and transfer of the mortgage and debt to a third person." In that case, the mortgagor conveyed the mortgaged premises, by a warranty deed, to Walker, who agreed orally, as part consideration of the conveyance to him, to pay a balance due upon the mortgage, which was represented by an outstanding note of the mortgagor. Walker, in pursuance of his agreement, made two payments upon the note, the payments not being entered upon the note, but the holder thereof merely giving his receipts therefor. Subsequently, after the maturity of the note, Walker induced the holder of the note to transfer the same and the mortgage securing it to Redman, who afterwards transferred it to the plaintiff in the case, who brought an action for the land, relying for title upon the mortgage deed. Prior to the bringing of this action, the balance due upon the mortgage, after deducting the two payments made by Walker before the transfer to Redman, had been paid, and the question was whether these two payments should be allowed in extinguishment of the mortgage. Walton, J., said: " The balance of the note has since been paid; and if these payments made by Walker are allowed, it has been paid in full. The question is whether these payments can be allowed. We think they must be. They were made by one whose duty it was to pay. He had agreed

so to do. The money was left in his hands for that special purpose. It was as if he had paid the full value of the land, and the grantor had then handed him back so much of the money as would pay the note, upon his promise that he would so apply it. It was not his money. In reality it was the grantor's money." That case is closely analogous to the one which we have in hand. Here the money which the executor paid in taking up the two mortgages upon the land in controversy was part of the purchase-money of the land, which Watson, the vendor, had left in the hands of the testator to be applied by him in paying off the debts secured by these mortgages. It was as much the duty of the executor to pay these mortgage debts as it would have been the duty of his testator to do so if he had lived.

6. If the testator had given the land to his daughter subject to these mortgages, that is, with the understanding that she was to pay them off, there might be some reason for the executor to contend that he, after paying them off, was entitled, in equity, to have the land sold and so much of the proceeds of the sale as might be necessary applied to reimbursing him for the amount which he had so expended for the benefit of the plaintiff. But we think it is clear from the evidence that the testator did not give the land to his daughter subject to the incumbrances thereon. In Thornton on Gifts and Advancements, § 402, it is laid down broadly that "A donee of land incumbered takes it without the incumbrance thereon, and if he pays the incumbrance he can recover the amount paid from the donor or his estate. Thus where a father promised his daughter to give her an estate upon her marriage, and afterward he did so, giving her an incumbered estate, which incumbrance she was compelled to pay off, it was held that she was entitled to file a claim against her father's estate for the amount paid with interest But, of course, the donor may, by express words or the like give the land subject to the incumbrance; or make it a condition of the gift that the donee procure its discharge." The case cited in support of the text, in which the ruling indicated was made, was that of Ungley *v.* Ungley, 4 Ch. Div. 73, where the law was thus laid down by Vice-Chancellor Malins, whose decision was affirmed by the Court of Appeals, consisting of Jessel, M. R., and James and Bramwell, L. JJ. 5 Ch. Div. 887. We do not, however, go to this extent in the ruling which we now make; for, however it may be

when the intention of the donor to give the land free of the incumbrances is a mere matter of inference from an unconditional gift of the same, we are clearly of opinion that if the donor, at the time of purchasing incumbered property for the gift, in effect declares such to be his intention, the donee, relatively to the donor or his estate, takes the property without the incumbrance. In the present case it was shown by uncontradicted testimony that the plaintiff's father, at the time he purchased the land in question, declared that he was purchasing it only for her, and expressly assumed and undertook himself to discharge the existing liens upon it. This, we think, showed an intention on his part to give the plaintiff the property unincumbered. And when this testimony is taken in connection with other evidence in the case, showing that the father had previously purchased another dwelling-house and lot to give to the daughter and allowed her to collect the rents therefrom, and, because she did not like the place for a home, had sold it, receiving therefor a much larger sum of money than that which he agreed to pay for the lot in controversy, and said he was going to invest this money for her until he could find a place that she liked, his intention to give her the land in dispute, unincumbered by any liens, becomes manifest. Such being the manifest intention of H. C. Harris at the time that he made the parol gift to his daughter, Mrs. Neil, she, so far as he or his estate was concerned, upon becoming entitled to a specific performance of the gift, took the land freed from the incumbrances, and his executor, by paying off the incumbrances, acquired no right to subject the land to the repayment of the amount which he had so expended. The portion of this request to charge in reference to the executor's right to recover the amount which he, at the request of the plaintiff, had spent in improving the property, if it had stood alone, would have been a proper and pertinent charge; but it was not incumbent upon the court to separate the good from the bad, and, the entire request not being legal and appropriate, there was no error in refusing to charge as requested.

7. In another ground of the motion it was alleged that the court erred in failing to submit to the jury the question as to the amount paid out by the executor for taxes upon the property, and in failing to submit to them the question as to the amount expended by him for repairs and improvements thereon, and to find a special

equitable verdict providing for the sale of the property and the re-
imbursement of the testator's estate for the amounts so paid out by
the executor.    There was no error in failing to instruct the jury to
find the amount which the executor had paid out for taxes on the
property, because the evidence showed that the plaintiff's husband
had paid the taxes for her, and there was no evidence that the ex-
ecutor had paid them at her request.    Certainly the executor could
not, by paying the taxes on the property, render the plaintiff or her
property liable to reimburse him for the amount so expended, when
she received no benefit whatever by his doing so and he did it
without any authority from her.

8.    Under the pleadings and the evidence, the court did err in
failing to instruct the jury to find the amount which the executor
had expended for repairs and improvements on the property, as he
was under no obligation to repair or improve the premises for the
plaintiff; and if he did so, he was entitled to be reimbursed for the
money so paid out by him.

9.    The court did not err in refusing to charge, as requested in
writing, that, " In case of a donee claiming title under the pro-
visions of section 4039 of the code, on the grounds that she
made valuable improvements on the faith of the gift to her, the
evidence must show that she made the improvements herself or
at her own cost."    Such is not the law.    This request was based
upon testimony showing that the plaintiff's husband had made cer-
tain improvements upon the premises for her.    It was immaterial
whether the improvements made upon the place were paid for
by the plaintiff or her husband, if they were made for her pending
her possession and upon the faith of the gift.    This is the effect of
the ruling made in *Porter* v. *Allen,* 54 *Ga.* 623.    In that case, Mrs.
Porter alleged that the owner of the Chalybeate Springs property in
Meriwether county had made her a parol gift of the same and de-
livered to her possession thereof, and that on the faith of this gift
she and her husband made valuable improvements thereon.    The
opinion of the court is stated in the headnotes, the fourth headnote
being as follows : " Slight improvements and of small value, pro-
vided they are substantial and permanent in their nature, beneficial
to the freehold, and such as none but an owner would ordinarily
make upon the estate under like circumstances, may constitute the
improvements contemplated by the statute: Code, section 3189 ;

but whether slight or extensive, they will not serve unless of real value, nor unless they are made by or for the donee pending her possession, and upon the faith of the parol gift sought to be set up and enforced by the bill." Here it was distinctly recognized that it was immaterial whether the improvements were made by "*or for*" the donee, provided they were of the requisite character and made, pending the possession of the donee, upon the faith of the gift. We feel sure that, under the law, improvements made for a donee by another person upon the land embraced in a parol gift, pending the donee's possession and upon the faith of the gift, stand upon the same footing as if they were made by the donee. They are made for the benefit of the donee and upon the faith of the gift, and are his improvements placed upon the land, and give to the donee the same rights, relatively to the donor, as he would have if he actually made the improvements himself.

10. In the last ground of the motion it was alleged that the court erred in refusing to charge the jury, as duly requested, that if Mrs. Walker purchased the house and lot, for a valuable consideration, from the executor, and, at the time of the purchase, had no notice of the claim to the title thereto by Mrs. Neil, then Mrs. Walker's title would be a good legal title and could not be defeated by Mrs. Neil's title; that the notice to Mrs. Walker of the plaintiff's title must be actual, and not constructive notice; and that the occupancy of the premises by Mrs. Neil and her husband was in law presumed to be the occupancy of the husband, and such occupancy would not be sufficient to put Mrs. Walker on notice of Mrs. Neil's title. There was no error in refusing this request. While the rule, as ordinarily stated, is that possession of land is notice of whatever title or interest therein the possessor has, we think that the real principle applicable in such a case is broader than this. The principle upon which the rule is founded is, that adverse possession of land is notice of whatever facts in reference to the title would be developed by inquiry of the person in possession, the presumption being that inquiry of him will disclose how, or under what right, he holds possession, and therefore lead to the discovery of the real adverse holder, whether himself or another for whom he holds possession. If he is a tenant, inquiry of him will presumably develop this fact and also the name of his landlord, and therefore a tenant's possession is notice of his landlord's title. His pos-

session is the possession of his landlord, and the presumption is that inquiry of him will develop this fact. At the outset, in the absence of notice of the tenancy, the presumption is that the person who is in posssssion as a tenant is in possession for himself. This is sufficient to put one who contemplates purchasing the land from some other person upon inquiry, and this inquiry must be directed to the person who appears to be holding adversely to the intending seller. Surely the mere presumption that a husband, living upon land with his wife, is in possession of the same in his own right can be no stronger than the presumption that a tenant, not known to be such, is in possession of the land which he occupies for himself. Inquiry in the one case will develop that the possession of the tenant is really the possession of the landlord ; inquiry in the other case will disclose that the presumed possession of the husband is really the possession of the wife. Possession by anybody adverse to the person offering to sell is sufficient to put the prospective purchaser upon notice of whatever inquiry of the occupant of the premises will develop; and in the absence of such an inquiry, the presumption is, that, had it been made, the right title or interest under which the possessor held would have been discovered.

From an investigation of the authorities and a consideration of the reason upon which the rule is founded, we have reached this conclusion as to its true import. This import or meaning is found in the broader and equally well-established rule which is stated in the Civil Code, § 3933, in the following language. " Notice sufficient to excite attention and put a party on inquiry is notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, is equivalent to knowledge in fixing the rights of parties." In Dickey *v.* Loyn, 19 Iowa, 547, Cole, J., who delivered the opinion, said : " The general rule is, that whatever puts a party upon inquiry amounts, in judgment of law, to notice of all such facts as, by the exercise of ordinary duty and diligence, would be developed by the inquiry. Again, it is stated as a general doctrine, that if a person purchases real estate which he knows to be in the occupation of another than the vendor, he is bound by all the equities which the party in such occupation may have in the land. These rules are frequently used in the books as synonymous, and are, by our best legal writers, inter-

changeably employed in relation to the same subject-matter. But it is evident that if whatever is sufficient to put a party upon inquiry is held to be good notice to bind him, he may be charged with notice and bound by equities other than those which appertain to the party in occupation, since an inquiry of such party would almost necessarily develop the title of the party under whom he claimed. The rule first stated seems, therefore, to have a broader scope than the latter. To give effect to this broader rule will recognize the correctness and give force to the other; while to limit ourselves to the latter will amount to a repudiation of a portion of the former." The fact that Mr. and Mrs. Neil were living upon the land was notice to Mrs. Walker of an adverse possession. The presumption was that the possession was that of the husband. Then Mrs. Walker must be held to have known that the husband was apparently and presumptively in possession of the house and lot and holding adversely to the executor, from whom she purchased. This was certainly sufficient to excite her attention and put her upon inquiry as to how and why Mr. Neil had possession of the premises. Such an inquiry might, and doubtless would, have led to the discovery that the possession, apparently in him, was really in his wife, and that she claimed to be the owner of the lot by virtue of a gift of the same made to her by her father, upon whose estate the executor who was seeking to sell the place to Mrs. Walker was administering. Mrs. Walker, then, being put upon inquiry by the fact that the lot was in the possession of one not holding under the executor, is presumed to have had notice of whatever such inquiry, pursued with ordinary diligence, would have disclosed. Such inquiry directed to Mr. Neil, who was presumably in possession of the premises, would doubtless have developed the claim of Mrs. Neil and the basis upon which it was founded. Relatively to the claim of Mrs. Neil, Mrs. Walker was, therefore, not an innocent purchaser, and hence is bound by whatever equities Mrs. Neil had.

Counsel for plaintiffs in error cite the fourth headnote in *Neal* v. *Perkerson*, 61 *Ga.* 346, which is as follows: "Joint residence of husband and wife on realty does not give notice of any claim of interest in it by the wife." This headnote, if considered apart from the case which was before the court, would sustain the contention of counsel in the present case; but when considered in connection with the facts which were before the court, it will be found that

the decision in that case, properly construed, simply means that joint residence of husband and wife upon realty does not give notice of a secret equity of the wife therein, to one dealing with the husband upon the representation and belief that the land belongs to him. In that case, the husband, while in possession of the land under a bond for titles from one from whom he had purchased it, had borrowed money from certain parties and, to secure the payment of the same, had given them mortgages thereon. He had also subsequently given his wife a mortgage upon the same land, to secure her for part of the purchase-money which had been paid by her before the giving of the first mortgages. The contest was between the holders of these first mortgages and the transferee of the mortgage given to the wife. So the question was, whether or not these older mortgage creditors of the husband, who had loaned him money upon the faith of his bond for title and possession of the premises, had, by reason of the joint residence of the husband and wife upon the land, notice of the secret equity of the wife therein. Obviously they had not, first, because the husband was not only presumptively in possession of the land in his own right, but under his bond for title he was actually thus in possession; and second, because the husband, when he used the land as a basis for credit to be extended to him and gave mortgages on it to secure the payment of his own debts, must necessarily have represented, to those from whom he borrowed the money and to whom he gave such mortgages, that he was in possession in his own right, so that these older mortgage creditors of his stood in the position of one who has made due inquiry of the person in possession of land and has been assured by him that he holds it in his own right. As the notice which the law in this State presumes from adverse possession of land is actual, and not constructive notice, the authorities cited by counsel in support of the contention that Mrs. Walker would only be bound by actual notice of Mrs. Neil's title do not support the theory that the court erred in refusing to charge as requested.

As the judgment of the court below is reversed solely upon the ground that the court erred in failing to instruct the jury to find what amount, if any, the executor had, at the request or with the consent of the plaintiff, expended for repairs and improvements upon the premises in dispute, a new trial is ordered upon this ques-

tion alone, with direction that in all other respects the decree rendered in favor of the plaintiff be allowed to stand; and if there should be a finding in favor of the executor upon the question indicated, then the said decree shall be so amended as to provide that the land recovered by the plaintiff be subjected to the repayment to the executor of the amount so expended by him, with lawful interest thereon. In view of the direction given above to the case, it becomes unnecessary to consider the questions made in the cross-bill of exceptions.

*Judgment on main bill of exceptions reversed, with direction; cross-bill of exceptions dismissed. All the Justices concur.*