### GUNN *vs.* CARTER *et al.*

If a debtor makes a payment to his creditor holding several demands against him, and does not, at the time of payment, direct how it shall be applied, the creditor may appropriate it to any of the demands; but where a creditor, holding several *fi. fas.* and an open account against his debtor, received a payment from him, and failed for seven years to appropriate it to any of the demands, other creditors having in the meantime obtained judgment, and a fund arising from the sale of the debtor's property being in court for distribution, the creditor will not be allowed to appropriate the payment to the open account and take the fund in court by reason of his oldest *fi. fa.* The law will appropriate the amount paid to the oldest *fi. fa.* held by the creditor.

October 10, 1882.

Appropriation of Payments. Debtor and Creditor. Before J. H. GUERRY, Esq., Judge *pro hac vice.* Randolph Superior Court. May Term, 1882.

Reported in the decision.

A. HOOD, Jr., for plaintiff in error.

C. B. WOOTEN ; J. G. PARKS, for defendants.

SPEER, Justice.

This was a rule brought by the plaintiff in error against the sheriff of Randolph county, for the purpose of distributing certain money in his hands arising from the sale of the property of R. V. Carter. It appears that the plaintiff in the motion claimed the money under a certain *fi. fa.* sued out in his favor *vs.* Carter, and which was older in date than the others contesting. He also held other *fi. fas.* of younger dates, as transferee, *vs.* Carter, that he had taken up. Monroe & Douglass had certain *fi. fas.* in their favor *vs.* R. V. Carter, under which the property had been sold and the fund brought into court. Monroe & Douglass tendered an issue of payment as to the *fi. fa.* of Gunn *vs.* Carter, and by consent it was agreed to submit all questions of law and fact to James H. Guerry, Esq., as judge *pro hac vice,* in place of Judge Hood, disqualified. The following are about the facts as given in on the trial: Gunn offered in evidence a *fi. fa.* in his favor *vs.* defendant Carter, dated at November term, 1864, for $219.20 principal, with credit and levies thereon. John T. Clarke testified that on an ejectment trial, Gunn, the plaintiff, testified : " I received some cotton from Carter. By agreement it was ginned at my gin house, with the understanding that it should go on his account of 1875, but when ready for market, a number of *fi. fas.*, including one for taxes, were in the sheriff's hands, and about to seize the cotton, when he (Gunn) took them up by paying for them in full—in amount more than the value of the cotton. There were also some *fi. fas.* in favor of Monroe & Douglass *vs.* Carter, which had been levied on land of Carter. Carter was contesting them, and preferred that he (Gunn) should get the proceeds of sale, rather than Monroe & Douglass

should get them; and so, instead of applying the proceeds of the cotton to any particular debt, he desired me to hold it subject to be ordered by him to the *fi. fas.* I had taken up, and to an older *fi. fa.* in my favor, provided said other *fi. fas.* were otherwise settled. Upon that understanding, Gunn gave Carter, in December, 1875, a receipt for $334.96, which amount, the receipt said, was subject to his order, to be credited to on the *fi. fas.* transferred, if the same were not otherwise settled. Carter never ordered the $334.96 applied. I always recognized his right to do so. Am now ready to put the credit on these *fi. fas.* if he says so."

Carter was sworn as to the payment of the older *fi. fa.* in favor of Gunn *vs.* Carter.

Gunn testified, denying that the *fi. fa.* in his favor *vs.* Carter had been paid. He also testified as to receiving the cotton of Carter, procuring transfer of the *fi. fas.* that were levied on it, and which he paid for ; had frequently tried to get Carter to apply said fund (proceeds of the cotton), but he had refused to do so. "I then gave Carter's account of 1875 credit by said amount of $334.96, being unable to get him to order it applied. Credited the account that day—that is, day of trial."

After hearing the evidence, the judge presiding determined that the elder *fi. fa.* of Gunn *vs.* Carter should be first credited by the said sum of $334.96, said amount being admitted to be in the hands of said Gunn of money belonging to R. V. Carter, and it being the oldest *fi. fa.* in court claiming the fund. To this judgment the plaintiff in error excepted, and assigns error thereon.

Up to the day of the trial below, it appears from the evidence that this fund of $334.96, raised from the proceeds of Carter's cotton, had remained in the hands of Gunn unappropriated, though he had various *fi. fas.* against Carter unsatisfied, as well as an account for supplies. And when other property of Carter's is sold by other creditors, and a fund brought into court, he seeks to have this fund ap-

plied to his *fi. fas.*, still retaining in his hands since 1875 the $334.96 unapplied until the day of trial. We are aware of the rule prescribed by the 2869th section of the Code as to the appropriation of payments. But the question is, whether, under the facts of this case, the plaintiff in error is in position to exercise this election now at so late a day, when he is in a contest with other creditors, whose equitable rights have intervened, in the distribution of money now claimed by him. He comes in seeking equity in this distribution, and his duty is to mete it out to others. We think the principle enunciated in the case of Calahan *vs.* Bozeman, 21 Ala., 246, in making appropriations of payments of money under circumstances somewhat analogous to this, eminently equitable, and worthy to be recognized. " If a debtor makes a payment to his creditor, holding two several demands against him, and does not at the time of payment, direct how it shall be applied, the creditor has the legal right to appropriate it to either demand ; but if he does not make the application until after suit is brought on both demands, neither party would be allowed to direct its application, but the law will appropriate it for them according to its own notions of justice."

We hardly think it equitable for this plaintiff to hold this fund in his hand unappropriated for seven years, at the same time holding these *fi. fas.* open and apparently in force, with the design of aiding a debtor to defeat and delay another creditor, and then, at the last moment, after suit is brought, to be allowed to appropriate the funds in his hands to an open account *prima facie* barred by lapse of time, and then ask the court to appropriate a fund raised by the diligence of other creditors, to the discharge of his elder lien. That lien, under the law, should long since have been paid off by money in his hands, according to its priority. We think the judgment of the court was right to appropriate this sum of $334.96 to this oldest lien, for in so doing regard was paid to the equities of other creditors, and this plaintiff has only been compelled

to do what, in equity and good conscience, he should long since have done voluntarily.

Judgment affirmed.