HALL, administrator, *v.* TURNER *et al.*

764

No. 15040.   JANUARY 6, 1945.

*A. B. Conger,* for plaintiff.   *A. H. Gray,* for defendants.

DUCKWORTH, Justice.   (After stating the foregoing facts.) ■
The facts of the present case do not show an instance where land
was conveyed to one who entered into possession with the record
title in his name, and where, as contended by the plaintiff in error,
the terms of a plain, unambiguous deed can not be varied or con-
tradicted by parol evidence.   Where, as here, an implied trust is .
sought to be shown by such evidence against one who is not in
possession, the provisions of the Code, § 38-501, that "Parol con-
temporaneous evidence is inadmissible generally to contradict or
vary the terms of a valid written instrument," have no applica-
tion.   *Guffin* v. *Kelly,* 191 *Ga.* 880, 885 (14 S. E. 2d, 50).   "In
all cases where a trust is sought to be implied, the court may hear
parol evidence of the nature of the transaction, or the circum-
stances, or conduct of the parties, either to imply or rebut a trust."
Code, § 108-108.   "A deed absolute in form may be shown by
parol evidence to have been made in trust for the benefit of the
grantor, where the maker remains in possession of the land."
*Chandler* v. *Georgia Chemical Works,* 182 *Ga.* 419 (185 S. E. 787,

105 A. L. R. 837). The claimants base their right in and to the land sought to be sold by the defendant administrator upon an implied trust, showing by testimony of their son, B. J. Turner, that when J. B. Turner conveyed the land to him, the consideration, although expressed in the deed as $1500, was in fact the right of the grantor and his wife to use and occupy the property and receive the rents and profits therefrom while they or either of them should remain in life. Since the deed did not specifically make the payment of the $1500 an essential condition, but the named consideration was merely by way of recital, this testimony was properly admissible without violating the parol evidence rule in the above-cited Code section. *Wellmaker* v. *Wheatley*, 123 *Ga.* 201, 203 (2) (51 S. E. 436); *Young* v. *Young*, 150 *Ga.* 515, 517 (104 S. E. 149). "While an express trust must be created by writing, and cannot be proved by parol, implied trusts may be established by parol evidence, although the effect of such evidence is to alter or vary a written instrument, and although the defendant sets up and insists upon the statute of frauds." *Jenkins* v. *Lane*, 154 *Ga.* 454 (3 a) (115 S. E. 126). See also *Jansen* v. *Jansen*, 180 *Ga.* 318, 321 (178 S. E. 654); *Sykes* v. *Reeves*, 195 *Ga.* 587, 590 (24 S. E. 2d, 688). "Trusts are implied—1. Whenever the legal title is in one person, but the beneficial interest, either from the payment of the purchase-money or other circumstances, is either wholly or partially in another." Code, § 108-106. An implied trust is sometimes more particularly a resulting trust. "An implied trust is sometimes for the benefit of the grantor, or his heirs, or heirs or next of kin of a testator, and is then a resulting trust." § 108-110. Such in effect is the trust here relied upon, since the right claimed was for the benefit of the grantor and his wife, to use and occupy the land and receive the rents and profits therefrom while they or either of them should live. The agreement testified to was, it is true, an express verbal one, but a trust arising under the circumstances named is not destroyed merely because it can not be enforced as an express trust required to be in writing, and upon equitable principles will be enforced as an implied resulting trust.. *Jackson* v. *Jackson*, 150 *Ga.* 544, 549 (104 S. E. 236); *McDonald* v. *Dabney*, 161 *Ga.* 711, 731 (132 S. E. 547); *Romano* v. *Finley*, 172 *Ga.* 366 (157 S. E. 669); *Hemphill* v. *Hemphill*, 176 *Ga.* 585, 590 (168 S. E. 878); *Allen* v. *Allen*, 196 *Ga.* 736, 745 (27 S. E. 2d, 679).

The evidence being undisputed that the grantee, B. J. Turner, held the title subject to the rights claimed by J. B. Turner, the grantor, and his wife, an implied resulting trust was thereby created in their favor. Hence, any transfer of this title, held exclusively for the benefit of the claimants during their lives would, without providing in the deed to another that the conveyance was subject to their rights, be a fraud upon them. B. J. Turner subsequently conveyed the land by absolute deed to his sister, Bessie Turner, and the question arises whether or not she was bound by the agreement made for the benefit of the parents, or was an innocent purchaser, and consequently the administrator's intestate, whom she had married after the execution of the deed to her, held the title free from any right of the claimants. B. J. Turner testified that when he conveyed to her for the recited consideration of $1500 and the further agreement on her part that she would pay off an outstanding loan in favor of Federal Land Bank of Columbia, she knew about the conditions under which the parents were living on the property, but this testimony was not tantamount to showing that she had agreed to such use and enjoyment. Nevertheless, it is fundamental law that "Possession of land is notice of whatever right or title the occupant has" (Code, § 85-408); and that "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, shall be equivalent to knowledge, in fixing the rights of parties." Code, § 37-116. These principles of law have been expounded in innumerable decisions of this court. The claimants were jointly in actual possession of the land when B. J. Turner in October, 1934, conveyed to Bessie Turner, and they had been in such possession since the land was purchased by B. J. Turner from H. B. Paul in 1917 or 1918, after which it was conveyed to J. B. Turner, who on February 22, 1930, by duly recorded deed conveyed back to B. J. Turner. The right here claimed is not only on behalf of J. B. Turner but also on behalf of his wife. While the title was in J. B. Turner when he conveyed to B. J. Turner in 1930, and, presumptively as to a purchaser, the possession was in him alone as the husband, such presumption is rebuttable. Code, § 85-408; *Grantham* v. *Wester,* 136 *Ga.* 17 (70 S. E. 790); *Mercer* v. *Morgan,* 136 *Ga.* 632 (2) (71 S. E. 1075).

The possession of the husband himself was sufficient to put Bessie Turner upon inquiry as to how and why he held possession. Such an inquiry might and doubtless would, since the husband is not shown to have represented or done anything to indicate that the possession was exclusively in him, have led her to the discovery that the possession, presumptively in him, was really that of himself and his wife jointly under a claim of equal right. *Walker* v. *Neil,* 117 *Ga.* 733, 745 (45 S. E. 387). As stated in the *Walker* case: "While the rule, as ordinarily stated, is that possession of land is notice of whatever title or interest therein the possessor has, we think that the real principle applicable in such a case is broader than this. The principle upon which the rule is founded is, that adverse possession of land is notice of whatever facts in reference to the title would be developed by inquiry of the person in possession, the presumption being that inquiry of him will disclose how, or under what right, he holds possession, and therefore lead to the discovery of the real adverse holder, whether himself or another for whom he holds possession. . . Possession by anybody adverse to the person offering to sell is sufficient to put the prospective purchaser upon notice of whatever inquiry of the occupant of the premises will develop; and in the absence of such an inquiry, the presumption is, that, had it been made, the right, title, or interest under which the possessor held would have been discovered." In *Neal* v. *Perkerson,* 61 *Ga.* 345 (supra), it was stated in the 4th headnote that "Joint residence of husband and wife on realty does not give notice of any claim of interest in it by the wife." This headnote was, as stated in *Austin* v. *Southern Home Assn.,* 122 *Ga.* 439, 447 (50 S. E. 382), written by the reporter of the court, and, as shown by Mr. Justice Fish in *Walker* v. *Neil,* supra, was broader than the facts of the case authorized; and "if considered apart from the case which was before the court, would sustain the contention of counsel in the present case; but when considered in connection with the facts which were before the court, it will be found that the decision in that case, properly construed, simply means that joint residence of husband and wife upon realty does not give notice of a secret equity of the wife therein, to one dealing with the husband *upon the representation* and belief that the land belongs to him." (Italics ours.) The facts of this case do not bring it within the general rule applicable where one is in

possession with the record title in his name and which, in *McDonald* v. *Dabney,* supra, is stated as follows: "If, of two occupants, one has the record title, a purchaser has the right to assume that the other has no title." Here the husband held no record title at the time Bessie Turner purchased from B. J. Turner, and he made no representation as to exclusive rights in himself. Hence the wife was equally entitled to prosecute the claim to the use and occupancy of the land jointly with the husband and to participate in the rents and profits therefrom.

But it is contended by the plaintiff in error that, under the testimony of B. J. Turner, the possession was joint with that of the intestate and his wife, formerly Bessie Turner, and hence did not constitute sufficient notice of the claim of the parents, since the possession must not only be open and visible but must be exclusive and unambiguous in nature. There was no testimony as to such alleged mixed possession at the time B. J. Turner conveyed to his sister, Bessie Turner, who subsequently married the intestate, J. G. Edwards. The evidence does show that after the execution of the deed to her, and after her marriage to Edwards, they lived part of the time in Early County, Georgia, and part of the time in Jacksonville, Florida, and that when in Early County they lived in the home with the claimants and made valuable improvements therein. All ate in the same dining room, and cooking was done in the same kitchen. The parents sat on the porch, used the living room, drank water from the well, slept in the house, and ate fruit from trees. It was only after such a description of occupancy as to manner and time that the witness used the expression, "It was a joint occupancy;" and certainly the jury was not required to interpret the expression as implying any occupancy by Mr. and Mrs. Edwards at the time of the conveyance to her as Bessie Turner in October, 1934. Nor was the jury required to construe the presence of Mr. and Mrs. Edwards in the home other than as a natural arrangement between relatives without any contention on their part that such residence was intended as a contest to the adverse possession of Mr. and Mrs. Turner as existing at the time of the conveyance by them to B. J. Turner and when he conveyed to Bessie Turner. There is nothing in the evidence to indicate any disclaimer, during such residence as described, that Mr. and Mrs. Turner were still the rightful occupants, and that the presence of Mr. and Mrs. Edwards was otherwise than permissive. While it

is shown that Mrs. Edwards returned the land for taxes and paid the taxes as the holder of the record title, this evidenced merely the discharge of a duty that rested upon her. The administrator testified that in 1943 he rented the land to one Whitehurst, son-in-law of Mrs. Turner, who paid the rent to him; but it was not affirmatively shown that Whitehurst ever occupied the premises, and the testimony of B. J. Turner was that J. B. Turner farmed the land as long as he was able and then rented out part of it and he and his wife continued to live there. They were still in possession when the defendant administrator went to the premises to make an inventory of the personal property belonging to his intestate. He testified that they did not inform him under what conditions they were there; but as it does not appear that he questioned their rights, their silence can not be said to defeat the bona fides of their claim.

For the reasons above shown, the jury was authorized to find from the evidence that Mr. and Mrs. Turner were at all times in adverse possession of the land under their bona fide claim of right, and that they did nothing to indicate any disclaimer of such right in and to the premises. Under the authorities above cited, Bessie Edwards was, at the time of her purchase, charged with notice of such claim, and the jury was authorized to find that she was not an innocent purchaser; that J. G. Edwards, as her sole heir, took the title to the land by inheritance, subject to the trust impressed by law in favor of the claimants. The verdict in favor of the claimants being authorized under the law and the evidence, the court did not err in overruling the general grounds of the defendant's motion for new trial.

■ Special ground 1 complains that the court erred in permitting the witness B. J. Turner, over objection of the movant, to testify on behalf of the claimants, it being contended that he was an incompetent witness for the reason that he was interested in the result of the suit because of his obligation to the claimants. This contention is obviously without merit, since the interest of the witness would not disqualify him, though his credibility would be a matter for determination by the jury.

■ Special ground 2 complains that the court erred in permitting the witness B. J Turner, to testify over objection of the movant that the recited consideration of $1500 in the deed from J. B. Turner to him was not the real consideration, which real consid-

eration was that J. B. Turner and his wife should have the right to use and occupy the land as hereinbefore stated, it being contended: (1) that it related to an interest in or was concerning land and violated the provisions of the Code, § 20-401 (4), that any contract for the sale of lands or any interest in or concerning them must be in writing; (2) that the evidence sought to change and vary by parol testimony the terms of a written contract in violation of the Code, § 38-501; (3) that the witness was a privy in estate and title had passed out of him and the testimony could not, under the Code, § 38-407, be received; (4-a) that the witness was interested in the litigation because of his obligation to the claimants; and (4-b) that the witness was incompetent to testify under the Code, § 38-1603 (4), which provides that, "Where a person not a party, but a person interested in the result of the suit, shall be offered as a witness, he shall not be competent to testify, if as a party to the cause he would for any cause be incompetent," it being contended that, if a party to the cause, he would have been incompetent to testify under the Code, § 38-1603 (1), which provides that, "Where any suit shall be instituted or defended by . . the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the . . deceased person as to transactions or communications with such . . deceased person whether such transactions or communications were had by such . . deceased person with the party testifying or with any other person." The contentions designated as (1), (2), (3), and (4-a) are disposed of, adversely to the movant, by what has been said in division 1 of the opinion. The provisions of the Code sections cited under contention (4-b) have no application to the facts of the case. The testimony of B. J. Turner, if it had been given as that of a party to the present litigation, would have had no relation to any transaction with the administrator's intestate, J. G. Edwards. Edwards's interest in the property devolved upon him only by inheritance as the sole heir at law of his wife, formerly Bessie Turner, and the transactions testified to by the witness were only with J. B. Turner and Bessie Turner several years before she married Edwards. Obviously the witness was not incompetent for any reason assigned.

■ Special ground 3 complains of a lengthy portion of the charge of the court, as not merely stating contentions of the claim-

ants but amounting to a statement of facts, which thus constituted an expression of opinion by the court, and was misleading and confusing and an undue and unauthorized emphasis of the claimant's contentions. Without setting forth the charge objected to, it is sufficient to say that it contained nothing but a recital of contentions. The excerpt began by prefixing the first-named contention by the statement, "The plaintiff contends," and thereafter each separate contention was preceded by the word "that." The context shows plainly that each statement was that of a contention by the claimants, and it would be a strained construction to say that the jury would not so understand it merely because the court did not continually repeat before the word "that" the words, "The plaintiff contends." This ground of the motion is without merit.

■ Special ground 4 complains that the court erred in a portion of its charge in stating that the claimants "say that they are in equity and good conscience entitled to the possession and occupancy of the said lands and the rents and profits thereof so long as they or either of them remain in life;" it being contended that their claim was not so based, but was based upon a definite parol agreement between the parties. The right of the claimants rests upon the trust impressed by law upon equitable principles, and the claimants appropriately alleged in their petition in aid of their claim that they "are in equity and good conscience entitled," etc. In fact, in using the language complained of, the court was merely repeating almost verbatim the contentions of the claimants in paragraph 11 of their petition, and, of course, it was not error to state such contentions.

■ Special ground 5 complains that the court, in a portion of its charge, submitted to the jury the question whether or not the witness, B. J. Turner, was competent to testify. The question of his competency was, as urged by the movant, a matter for determination by the court and not by the jury. Since, however, the court should have itself decided as a matter of law that, as hereinbefore ruled, the witness was not incompetent even though interested in the litigation, although his credibility would be for the jury's determination, the submission to the jury of the question of his competency could not be said to be harmful to the movant, but was favorable to him.

*Judgment affirmed. All the Justices concur.*