1. Where the petitioner purchased described lands under a parol agreement and paid the purchase price in full, obtaining a deed which by inadvertence of the grantor failed to include a 13-acre tract embraced in the parol purchase, and immediately entered into possession, the perfect equity, equivalent to legal title, thus acquired by him was limited to the portion of the 13 acres actually occupied.
2. Where such purchaser subsequently brought an action to restrain from trespassing upon the 13 acre tract a named defendant who, prior to the time when the petitioner obtained a deed to the land in dispute, had acquired and recorded a deed executed to him by the grantee of the petitioner's grantor, and the petitioner relied upon his own prior possession as notice to the defendant of his rights and title, but the evidence showed actual possession by him only of portions of the tract, the extent of which actual occupancy was not made to appear with such definiteness as would have enabled an enforceable verdict to have been rendered in his favor and a definite judgment thereon entered showing what portions of the premises the defendant should be restrained from trespassing upon, the judgment entered in accordance with the verdict in favor of the defendant must be affirmed.
 No. 15303. NOVEMBER 13, 1945.
Thomas Toms filed a petition against R. R. Knighton, which as amended alleged substantially the following: The petitioner is the owner of all that part of land lot No. 284 which lies west of the west arm of Tobenannee Creek in the 8th land district of Quitman County, Georgia. He obtained title thereto by a warranty deed executed and delivered to him by W. A. Cotton, dated March 14, 1935, by payment of the purchase-money and actual occupation and possession of the premises from the date of said deed, and by deed from W. A. Cotton to the petitioner, dated April 10, 1944, which deed describes in more detail the premises conveyed on March 14, 1935. The defendant owns lands adjoining and adjacent to the said lands of the petitioner and lying east of the west fork of the said creek. The petitioner entered into possession of his said land on March 14, 1935, cleared it, and has cultivated and worked it since that time, exercising complete and absolute control over the same. The defendant is attempting to take possession of the land and has already started cultivating a part of the same. In the early part of the year 1944 the defendant entered upon the said lands and by threats and intimidation drove the petitioner's laborers *Page 859 
and tenants, who were then engaged in preparing the said land for the planting of crops thereon, from the said land, and himself proceeded to cultivate the same and use and occupy it until he was restrained by order of court. The defendant is now attempting to build a wire fence around the land and threatens to take it over. His acts amount to a trespass, and he threatens to continue such acts of trespass and will do so unless the petitioner is granted relief. The petitioner does not have an adequate remedy at law, as a suit would be necessary upon each act of trespass and this would result in a multiplicity of suits. The defendant is asserting the right to use and occupy the said land and is attempting to exclude the petitioner from the use and enjoyment of the same. He has by threats and intimidation forced the petitioner's laborers to leave the land and to cease cultivating the same. He will continue to exclude the petitioner and his laborers and tenants from using the land, and threatens himself to go upon the same from day to day, to plow up the same, to plant the same in crops, cultivate the crops, and harvest them, thus committing continuous acts of trespass from day to day and from time to time, which acts will occasion a multiplicity of suits. The prayers were that the defendant, his agents, croppers, servants, and employees be enjoined from going upon the land for any purpose whatever, from building any fence thereon, and from interfering with the petitioner in any manner in his possession and cultivation of the land, and for process.
The defendant answered, denying the allegations of the original petition as to ownership and possession by the petitioner, and alleging that he was in possession and had started cultivating the land when the suit was filed.
The evidence for the petitioner was substantially as follows: In 1935 he purchased from W. A. Cotton certain described lands, together with that here involved consisting of 13 acres in the northwest portion of land lot 284, described in the petition, and paid the purchase-price of $470. Through oversight the deed executed to him on March 14, 1935, and duly recorded on March 15, 1935, did not include the 13 acres in controversy. Nevertheless the petitioner immediately went into possession and plowed the land, helped cut a ditch across the land and cut bushes, and besides cultivating all the land that was not too wet, that is, cultivating four *Page 860 
or five acres, and leaving a batch of timber, he enclosed a pasture of three or four acres with a wire fence, the pasture being in the middle of the north part of the tract. He cleared the land and tended it the same year he bought it, and put a fence around it the next year, and most of the fence is still there. He continued to work the land until 1943, when the defendant ran from the land certain negro hands of the petitioner whom he had sent to plow it. The defendant plowed the land in 1943, but by an injunction suit, brought by the petitioner in 1944, was prevented from further trespassing at that time. Because of this litigation the land was not cultivated in 1944, though the petitioner plowed up a small patch in that year. When he started to clearing the land originally, he gave the defendant some wood from his acreage in lot No. 284 and it was hauled away by the defendant. About two weeks before the present suit was instituted, the petitioner located in Florida, his grantor, who on April 10, 1944, executed to the petitioner a deed, duly recorded on April 14, 1944, conveying the land in lot No. 284 which had been omitted by oversight from the deed of March 14, 1935.
Marion Toms, son of the petitioner, testified that in a conversation with the defendant in 1944 the latter stated to him that he did not doubt that Thomas Toms had bought the land in controversy, but that it was not in the deed executed to him on March 14, 1935.
The defendant claimed under the following chain of title: A deed dated July 9, 1937, from W. A. Cotton, the petitioner's grantor, to Loren Gary, conveying certain lands including the 13-acre tract in lot 284, and duly recorded, though the date is not shown by the record. A deed dated November 15, 1941, from Loren Gary to the defendant, conveying the same lands described in the aforementioned deed to Loren Gary. This deed to the defendant was duly recorded on February 14, 1942.
The defendant testified: "I bought that land from Dr. Gary on November 15, 1941. When I bought that land in lot 284, which lies in the northwest corner of the lot and west of Tobenannee Creek, it was not in the possession of Mr. Toms. I made a crop on part of it in the year 1943. I think Mr. Toms cultivated it probably in 1942. Mr. Toms was not in possession of it on November 15, 1941, when I bought it from Dr. Gary. Mr. Toms *Page 861 
cultivated the land in 1942. It did not look like when I bought it in 1941 that anybody was cultivating it. When I went to look at it, all I saw was lots of bushes and trees. I did not see any cleared land on lot No. 284. If Mr. Toms cultivated it in 1942, I guess there was some cleared land on it. I did not see him clear it up in 1942. Q. If he cultivated it in 1942 and it was not cleared up in 1942, there had to be some cleared land on there in 1941? A. It could have been cleared up the year before, but it was not all cleared. I had to clear lots of bushes the year I worked it. I went all over it the year I bought it. I did not see any fence on it in 1941. I don't remember seeing a ditch that the W. P. A. cut there. There is a ditch there now. I could not say it is the ditch the W. P. A. cut. The only time that I know that Mr. toms cultivated this land was in 1942. I say he did not cultivate it in 1941. After November 15, 1941? Of course, I didn't have any cause to know about it before that. I don't know whether there was a fence on it before November 15, 1941, that is, when I bought the land. I did not go over there before November, 1941, to see if anybody was cultivating the land. It did not look like anybody cultivated it in 1941 whenever I went there. I did not see anything to make me think it had been cultivated. I could not say that he did not cultivate it in 1940. I was not interested in it at that time. I don't know anything about this land until after I claim I bought it. After I bought this land I did not make a statement to Marion Toms that I thought Mr. Toms had bought this land but it was not in the deed. I did not tell him anything about any trade that I knew had occurred between Mr. Toms and Mr. Cotton. I talked with Marion Toms in 1944, but I had worked the land, made a crop on it, and gathered it. When I went on the land in 1943, I did not see anybody. I did not see any negroes working on that land. None of the land had been broke up on lot No. 284. I don't remember seeing any negroes at all when I went over there in 1943 to start working the land. I waited until then to start working it because I had just got to where I could work it. I think I looked at the record of the deed from Mr. Cotton to Mr. Toms in 1943. Then I started working the land. I did not get around to working this particular part of the Hill place until 1943, I think. I did not get any wood from the land west of Tobenannee Creek in lot No. 284. I got some *Page 862 
from off the hill up there. I learned later it was on lot number 885, which is the land described in Mr. Toms' first deed. I got that wood from Mr. Toms' place. I hauled it myself."
The jury returned a verdict for the defendant, and judgment was entered accordingly. The petitioner's motion for new trial was overruled, and the exception here is to that judgment.
"The purchase of land, full payment of the purchase-money, and possession, create a perfect equity, which is good against the vendor, his heirs and those claiming under him with notice." Sikes v. Seckinger, 164 Ga. 96, 102
(137 S.E. 833). See also Grace v. Means, 129 Ga. 638
(59 S.E. 811); Lee v. Pearson, 138 Ga. 646 (5) (75 S.E. 1051);Wall v. L. N. Railroad Co., 143 Ga. 417, 420 (1) (85 S.E. 325); Elrod v. Bagley, 154 Ga. 670 (115 S.E. 3). "A perfect equity is the equivalent of legal title." Bank ofArlington v. Sasser, 182 Ga. 474 (3) (185 S.E. 826);Chapman v. Faughnan, 183 Ga. 114, 115 (3) (187 S.E. 634);Sikes v. Seckinger, supra. "Possession of land is notice of whatever right or title the occupant has." Code, § 85-408;Baldwin v. Sherwood, 117 Ga. 827 (45 S.E. 216); Dix v.Wilkinson, 449 Ga. 103 (2) (99 S.E. 437); McDonald v.Dabney, 161 Ga. 711 (8) (132 S.E. 547); Chandler v.Georgia Chemical Works, 182 Ga. 419 (1-a) (185 S.E. 787, 105 A.L.R. 837); Hicks v. Hicks, 193 Ga. 382, 383
(18 S.E.2d 763). "He who takes with notice of an equity takes subject to that equity." Code, § 37-115; Elrod v. Bagley, supra. The notice which the law in this State presumes from adverse possession is actual notice and not merely constructive notice.Walker v. Neil, 117 Ga. 733, 748 (45 S.E. 387); Dyal v.McLean, 188 Ga. 229, 231 (3 S.E.2d 571). Of course, the possession which would amount to notice is not simply possession at some time prior to the acquisition of a deed by the contestant, but possession at the time such deed is obtained.Webster v. Black, 142 Ga. 806 (3) (83 S.E. 941); Wood v.Bowden, 182 Ga. 329 (6) (185 S.E. 516). "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, shall be equivalent to knowledge, in fixing the rights of parties." Code, § 37-116; Walker v. Neil, *Page 863 
supra; Georgia R. Bank c. Co. v. Liberty Bank c. Co.,180 Ga. 4 (4-c) (177 S.E. 803); Hall v. Turner, 198 Ga. 763,769 (32 S.E.2d 829). "The knowledge chargeable to a party after he is put on inquiry is not limited to such knowledge only as would be gained by an examination of the public records."Dyal v. McLean, supra. If no inquiry is made as to adverse possession, the presumption is that inquiry would have developed the right or title under which the possessor held. Austin v.Southern Home Asso., 122 Ga. 439 (1) (50 S.E. 382); Parker
v. Gortatowsky, 127 Ga. 560, 563 (56 S.E. 846).
It is clear that under the evidence and authorities above mentioned the petitioner obtained a perfect equity, equivalent to legal title, in and to some portions of the land in controversy as against the grantor, his heirs, and those claiming under himwith notice. The notice upon which the petitioner relies to defeat the claim of his adversary under a subsequently recorded deed and alleged possession is that notice which is given by the petitioner's possession at the time the defendant acquired his deed to the land in dispute. The evidence fails to show actual occupation of the entire premises. "Actual possession of lands is evidenced by inclosure, cultivation, or any use and occupation thereof which is so notorious as to attract the attention of every adverse claimant, and so exclusive as to prevent actual occupation by another." Code, § 85-403. The nearest approach to showing full possession or occupation is the statement of the petitioner, after testifying that he put a part of the land in pasture and put a fence around it, that "I put a fence around it the next year after I bought it."Assuming that he was referring to a fence around the entire acreage, and not merely the pasture, his testimony does not assert that the fence was intact and complete on November 15, 1941, when the defendant acquired his deed. "Most" of the fence is still there. The fence is incomplete, but when it ceased to be complete is not disclosed. For aught that appears it was not continuous on November 15, 1941. Therefore, it can not be said that on that date a fence encircled the entire premises and the petitioner had possession of the whole, and it is not claimed that it was aided by natural barriers. Will his possession in part, together with full payment of the purchase-price, entitle the petitioner to a perfect equity in the entire 13 acres contracted for? The answer will depend *Page 864 
upon whether or not the actual possession will extend his possession to the full acreage. Since the petitioner obviously did not occupy the entire premises on November 15, 1941, he could not successfully assert title to all of the 13 acres unless aided by what has become known as "constructive possession." But at common law only actual possession was recognized, and constructive possession, as evidenced by our Code and the decisions of this court, and according to text writers, is applicable only where there is paper title. "The essential elements of constructive possession are: 1. A writing describing the tract and purporting to confer title thereto upon the possessor, i.e., color of title. 2. Actual possession of some portion of the tract. 3. A claim of ownership, over the portion not held in actual possession, as well as over that portion so held." Powell on Actions for Land, § 307, and numerous cases there cited. Admittedly the petitioner had, on November 15, 1941, when the defendant acquired his deed, no paper title to any part of the land in dispute, and thus legally he would seem to be limited in his title to actual occupancy. The decisions we have cited as to equitable title, by reason of a parol purchase, full payment, and possession, do not contain any specific discussion as to the extent of possession by the holder of the equitable title, and the point does not seem to have been raised. So far as is indicated by the decisions we have cited, actual possession may have been assumed by this court. However, in Cook v.Long, 27 Ga. 280, this court did deal with the question as to the extent of possession of an occupant possession pedis under a parol purchase of land with money fully paid, and it was held that "one going into possession of land, under a parol purchase, can hold only to the extent of his actual possession." That decision has never been criticized or disapproved and is controlling here, and requires us to rule, as we do, that the petitioner's right or title was limited to the portion of the premises actually occupied.
It becomes unnecessary to determine whether or not the evidence required a finding as a matter of law that the defendant was put on notice of some actual possession by the petitioner, since such notice would not be sufficient to entitle the petitioner to prevail as to the entire premises. The geographical actual possession of the petitioner was not made to appear with such definiteness as would have enabled a verdict in his favor to have been rendered *Page 865 
and enforced; and if any affirmative relief were sought to be granted by the trial court, it could not be ascertained to what extent the defendant should be restrained from trespassing. Hence, assuming but not deciding that by his petition the complaint was charging trespass by the defendant, and not possession, at the time the action was brought, the only verdict that could have been legally rendered under the evidence was one finding in favor of the defendant. Accordingly, the judgment must be affirmed. Compare Tripp v. Fausett, 94 Ga. 330
(21 S.E. 572); Whitehead v. Pitts, 127 Ga. 774 (56 S.E. 1004);Ragan v. Carter, 145 Ga. 320 (1) (89 S.E. 206).
Judgment affirmed. All the Justices concur.