## CAIRO BANKING COMPANY *v.* HENDERSON *et al.*

1. The plaintiff in fi. fa. was not a bona fide purchaser for value, because the circumstances were sufficient to have required a man of ordinary prudence to have seen that a prior outstanding lien against realty which he was about to take as security for a debt had been duly canceled upon the record which for more than six years had presented constructive notice of such prior lien.
2. The claimant was not estopped to assert her rights by reason of any representations whatsoever.
3. There was no evidence to authorize a finding that the administrator was guilty of any fraud. He was under no obligation to inform the prospective purchasers of an interest in the real estate in question, and which was held by his brother under bond for title, that the tract of land was subject to a lien; for two reasons: first, because, so far from inducing the bargain, he declined to execute a deed as administrator; and second, because the lien in question was a matter of public record.
4. The question whether there were five children or six is entirely immaterial, since the plaintiff in fi. fa. is estopped to deny that there were six shares in the estate, by its own dealings in which the estate was treated as being divided into six parts.
5. The uncontradicted evidence in this case showing that the original note and security deed were duly transferred in writing and assigned to the transferee by the payee and holder of the security as the purchaser of both the debt evidenced by note and of the land given as security for the payment thereof, and the evidence being wholly insufficient to impeach these entries for fraud, the contention that the debt had been paid, and thereby the security was destroyed, can not be sustained.
6. There was no error in overruling the motion for a new trial.

No. 5360. FEBRUARY 15, 1927.

Claim. Before Judge Custer. Mitchell superior court. February 13, 1926.

---

Estoppel, 21 C. J. p. 1120, n. 14; p. 1202, n. 21.

Fraud, 27 C. J. p. 68, n. 25.

Mortgages, 41 C. J. p. 672, n. 79; p. 673, n. 85; p. 696, n. 4; p. 785, n. 17, 31; p. 817, n. 80.

New Trial, 29 Cyc. p. 824, n. 41.

*S. P. Cain,* for plaintiff.

*Gardner, Gardner & ·Crow,* contra.

RUSSELL, C. J.    According to the equitable amendment filed by the plaintiff in fi. fa. (present plaintiff in error), in 1913 Elias Henderson owned a tract of land in Mitchell County.    But it appears from uncontradicted evidence that his wife, Hester Henderson, had for many years prior to 1913 owned an adjoining tract in her own right, and Elias lived, not on his own place, but "in his wife's house" on her land.    It is admitted in plaintiff's amendment in aid of the levy that through Howard M. Smith & Company of Macon, as brokers, Elias Henderson borrowed $2,500 from one Edward W. Dewey and to secure the loan executed a security deed dated September 14, 1913, conveying to Dewey the tract of land which he owned adjoining his wife's home place.    This deed was duly and timely recorded in book 25, page 598, in the clerk's office of the superior court of Mitchell County.    Thereafter Elias Henderson died, and his son, George Henderson, was appointed administrator of his estate.    In the fall of 1919 Jesse Henderson, another son of Elias Henderson, was in jail, and wanted some money.    He was the holder of a bond for title executed and delivered to him by his father, the deceased intestate, whereby a deed was to be executed conveying to him, upon the payment of the stated purchase-price, a certain 135-acre parcel which was included in the entire tract to which the father had executed the loan deed to which reference has just been made.    J. L. Peebles agreed to advance the needed funds if Jesse could secure the loan by a conveyance of his one-sixth undivided interest in the estate of his father, Elias Henderson, and by a deed to the 135 acres described in his bond for title.    When the proposing lender saw the mother and brother of Jesse and proposed that this conveyance be made, they refused to consent to the plan, even though Jesse might have to stay in jail; and the administrator declined to execute said deed.    However, upon being told by counsel for Mr. Peebles, as well as his own counsel, that he could be compelled to make the deed upon payment of the remainder of the purchase-price due by his brother Jesse, the administrator finally consented, and on February 2, 1920, upon the payment and the receipt of the sum of $776, as administrator he executed a deed in conformity with the terms of the bond for title.    The record does not show.

what sum was due as the purchase-price for the 135 acres of land, but the small amount paid the administrator on that acreage in that section in February, 1920, raises no presumption that the amount paid him was in excess of the unpaid purchase-price owed by Jesse Henderson to the estate of his father, represented by the administrator. Of course the title obtained by the holder of the bond for title was subject to the prior security deed in favor of Dewey, standing unchallenged upon the record, as it is admitted to be a part of the land conveyed to Dewey. It does not appear that any notice was taken of the record of Dewey's deed, or of the fact that it had not been entered as canceled. So far as the record discloses, it was a recorded lien with title to secure it, covering not only the tract of land conveyed to Jesse Henderson by his father, but also all of the realty of Elias Henderson. It seems from the brief of plaintiff in error that Peebles advanced something over $2,000 for Jesse Henderson; but since it is agreed that the administrator was only paid the sum of $776.03, we are not concerned with the disposition of the remainder of the $2,000. The $776.03 was not paid to the administrator by Jesse Henderson, the debtor, or by Mr. Peebles, his creditor, but was paid to the administrator by check of his own attorneys. On May 23, 1923, a transfer of the debt and the original deed of Edward W. Dewey was entered upon the record in the clerk's office of the superior court of Mitchell County, conveying to Mrs. Hester Henderson all his right, title, and interest in the entire tract of land given as security for the debt, and under a power of sale contained in the deed Mrs. Henderson, as attorney in fact for Elias Henderson, sold the land in accordance with the provisions of the deed. At the sale George Henderson bid in the tract of land for his mother, and a deed was executed conveying the premises to her.

This case was brought about by reason of the fact that the Cairo Banking Company, as transferee of the rights of J. L. Peebles and of a note given by George Henderson individually, which had been sued to judgment, was proceeding to sell a one-third interest in the real estate conveyed by Elias Henderson to Dewey. Mrs. Henderson interposed a claim against this levy. The case was submitted to the judge without the intervention of a jury, and he found in favor of the claimant and that the property was not subject. A motion for a new trial was overruled, and exception is

taken to that judgment.   The motion is based upon the usual general grounds, and amending grounds which merely set out more fully specific reasons why the verdict and judgment of the court are contrary to the evidence and to law.   The plaintiff in error insists that the transfer of the security deed of Dewey to Mrs. Henderson is fraudulent and void, and that the administrator was guilty of a fraud in not applying the $776.03 paid by Jesse Henderson on the purchase-price of the 135 acres of land, to 'the extinction of the debt due to Dewey; and in fact fraud is charged against the administrator as well as the claimant in every possible way.   The plaintiff in error relies upon the principle that Peebles, and consequently the Cairo Banking Company, is a bona fide pur-chaser for value, and as such will be protected against secret equities. · We are of the opinion that this contention is without merit.   The law is very vigilant to protect bona fide purchasers without notice against any undisclosed equity, but notice extends to discovery of anything which reasonable care for one's self-preservation could discover by the exercise of ordinary diligence. In view of the fact that Jesse Henderson, as a son and privy of Elias Henderson, knew that the land he was transferring to Peebles was subject to the recorded deed in favor of Dewey, and Peebles therefore could get no better title than he had, the claim that Peebles was a bona fide purchaser without notice can not be sus-tained.   Not only Jesse Henderson, but Peebles and his attorney, had constructive notice that the land purchased from Jesse Hender-son, as well as his one-sixth interest in his father's estate which was purchased by Peebles, was subject to the prior deed in favor of Dewey.   The fact that they were informed that the deed had been transferred to Merry was sufficient to lead to inquiry as to why the transfer to Merry had not been entered upon the record. It was ample to have put them on such notice as would have led them to require that the Dewey deed be canceled of record before they paid any money to Jesse Henderson for the 135 acres of land or for his one-sixth interest in the estate of Elias Henderson, his father.   The argument that it is unreasonable to suppose that Peebles would have advanced $2,000 for Jesse Henderson's 135 acres of land and his one-sixth interest in the remainder of his father's plantation is without any force whatever, because the real estate in question might be of such value that Peebles or any

other purchaser could well have afforded to assume the Dewey loan.

It is further insisted that "when the claimant, Hester Henderson, and the administrator stated that the long-loan paper belonged to Mr. Merry, and referred Mr. Peebles' attorney to Mr. Merry, she was estopped from afterwards asserting that she owned said security claim." In support of this proposition learned counsel for the plaintiff in error cite *Hall* v. *Citizens Bank of Hazlehurst*, 147 *Ga.* 27 (92 S. E. 536). There is no similarity in the facts of this case and those of the *Hall* case. In that case this court held that there was evidence to authorize a jury to find that the claimant was estopped to assert title against the plaintiff in fi. fa., because of representations made by the *claimant* to the grantee in the deed at the time of its execution that the grantor owned the land, whereby the grantee was induced to sell his property on credit to the grantor. In the present case there is not one syllable of evidence that Mrs. Hester Henderson, the claimant, has ever at any time made any declarations or intimations adverse to the interest she now claims. She certainly did nothing, nor did George Henderson, the administrator, do anything to induce Peebles to take a deed to the 135 acres from Jesse Henderson, or to induce him to subsequently buy Jesse Henderson's interest in the estate of his father. The administrator at first positively refused to make a deed to the 135 acres, and only did so when he was informed that by law he could be compelled to execute the instrument, which he did. However, as already stated, the bond for title of Jesse Henderson was subject to the Dewey deed at the time it was executed, and until the Dewey claim was actually satisfied. In the trial now under consideration the judge occupied not only his lawful position as judge, but he also stood in the place of a jury; and a careful review of the evidence convinces us that the finding upon the facts is so strongly supported by a preponderance of the evidence that a judge would have erred to have set aside the verdict had it been returned by a jury.

The plaintiff in error relies most strongly upon fraud, and we concur most heartily in the code section which declares that fraud voids all contracts. Upon a careful review of the record we find no evidence whatever of fraud. The loss, if any, sustained by the Cairo Banking Company is caused by the omission to see that the

debt evidenced by Dewey's deed, which faced them upon the record, was fully paid and the evidence thereof upon the record entered canceled, before proceeding to the conclusion of the negotiations in which Peebles first purchased Jesse Henderson's claim to the 135 acres, his claim to an interest of value in the estate of his deceased father, which were afterwards sold to George Henderson, the defendant in fi. fa. in this case, for $400 cash and the $1,600 note upon which the execution in favor of the Cairo Banking Company was proceeding. The original debt was $2,500. A review of the evidence shows as follows: The president of the First National Bank of Pelham testified that on October 24, 1918, more than a year before the beginning of the transactions under review in this case, George Henderson bought New York exchange for $2,-532.21, payable to Howard M. Smith & Co. of Macon, and that this check was paid to H. M. Smith & Co. It was further shown by this witness that $1,500 of this amount was paid by George Henderson's check that day upon his individual account. H. H. Merry swore that he put in between $1,000 and $1,100 towards the payment to H. M. Smith & Co.; and in compliance with their promise to him, Dewey's deed was duly transferred and assigned to him (Merry) by deed of date October 30, 1918. The testimony of George Henderson, corroborated by the books of original entry of the bank, shows that every dollar of the $1,500 was money delivered at different times by Mrs. Hester Henderson to her son George, to be paid in extinction of this specific Dewey debt. On October 1, 1919, Mr. Merry swears that $500 was paid to him upon the debt, but who paid him he is unable to recollect. The testimony of George Henderson is that the $500 was the money of his mother from 3 bales of cotton raised on her tract of land and sold three days prior to that time. He exhibited the original cotton bills in corroboration of his testimony showing that the cotton sold for $499.52 and his testimony that his mother gave him the 48 cents to complete the payment is uncontradicted. So that when the transaction of February 2, 1920, occurred, it is absolutely uncontradicted that Mrs. Henderson had an equity of $2,000 in the deed which originally was for $2,500; and so when George Henderson from his own funds paid Mr. Merry $642.03 in full payment of his demands as transferee of the Dewey debt and deed for his own security in the sum of $1,042 which he had advanced in ob-

taining the transfer of Dewey's note and security to himself, he had a perfect right, at the request of George Henderson, to transfer the security deed to his mother and himself or to enter it fully paid. Very naturally, as other heirs of Elias Henderson had paid nothing to relieve this encumbrance upon the property of the intestate, Mrs. Henderson, who had paid $2,000, and George Henderson, who had paid $632, wished the others to contribute and repay them what had been advanced, and Mr. Merry had a perfect right to comply with their request in that respect. Of course that this was what actuated the parties in making the transfer is merely a matter of inference; but certainly there is nothing in the proof to support the theory for which the plaintiff in error contends, that the payments made by Mrs. Henderson and her son to Mr. Merry were intended to be made in extinction of the debt for the purpose of their divesting themselves of any right to contribution. It is true that payment of the debt would have destroyed the security, as stated in 27 Cyc. 1395, 1396, *Walker* v. *Neil,* 117 *Ga.* 733, 740 (45 S. E. 387), and *Clay* v. *Banks,* 73 *Ga.* 363, cited by counsel for plaintiff in error; but it is unreasonable to suppose, in view of the proof that substantially the entire debt was paid by Mrs. Henderson herself, that she would have destroyed her own right of subrogation, and certainly Mr. Merry had no interest in the matter one way or the other.

To establish fraud in this case the plaintiff in fi. fa. must have shown that the claimant did something to induce it to act in a manner different from what it otherwise would have acted, and that the sayings or conduct of the claimant induced the plaintiff in fi. fa., or its predecessor, Peebles, to act to his injury. As already stated, there is no evidence that Mrs. Henderson ever had a conversation with any of the parties concerned in any of the transactions. She patiently paid from time to time the accumulations of her property and her industry. It appears from the record that at the time the claim was interposed Mrs. Henderson had repaid to her son George the money which he had advanced at the time Mr. Merry made the transfer to them jointly, and was therefore the sole owner of the Dewey debt and its security. There was no error in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur, except Beck, P. J., and Hines, J., dissenting.*

ATKINSON, J., concurs in the result.